[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant Holly Hummell appeals the judgments of the Court of Common Pleas of Marion County, Juvenile Division, terminating her parental rights and responsibilities and granting permanent care and custody of her two minor children to Appellee Marion County Children's Services Board (MCCSB).[1] We affirm.
Appellant's children, Travis Cranston, d.o.b. December 3, 1990, and Troy Cranston, d.o.b. July 26, 1993, have had a long history with MCCSB. Significant contact with the agency began in April, 1993, when the children were adjudicated dependent. In December, 1994, the boys were adjudicated neglected and dependent. Although the trial court made these findings of dependency and neglect, Travis and Troy were permitted to remain in Appellant's custody until January, 1995. At that time, the boys were removed from Appellant's home and placed in temporary foster care due to signs of physical abuse such as bruises and strapmarks.[2]
The children were subsequently adjudicated abused in July, 1995.
Following the boys' removal from Appellant's residence, MCCSB developed a case plan which was approved by the trial court in February, 1996. The case plan required Appellant to, among other things, live in a stable and adequately kept home, provide a healthy moral example to her children and learn to reason and make appropriate judgments regarding her family's health and welfare. MCCSB also made several social service programs available to Appellant such as counseling, parenting classes and home services. Appellant declined to take advantage of many of these programs. Although Appellant was not hostile toward MCCSB, she showed little or no motivation to comply with the case plan. Thus, on July 12, 1996, MCCSB petitioned the trial court for permanent care and custody of Travis and Troy pursuant to R.C. 2151.353 and R.C.2151.414.
Hearings on the matter were held in June, July and August of 1997. On January 6, 1998, the trial court issued its journal entries finding by clear and convincing evidence that the children could not be placed with their parents[3] and that the best interests of Travis and Troy would be served if MCCSB's motions were granted. The instant appeal followed.
Appellant asserts the following assignment of error for our review:
 The lower court erred in granting permanent custody of the Appellant's two (2) minor children to the Marion County Children's Services Board.
Appellant essentially argues that the trial court erred in terminating her parental rights and responsibilities because the decision was not supported by clear and convincing evidence. We disagree.
R.C. 2151.353(A)(4) authorizes a trial court to grant permanent custody to a public children's services agency in the event that a child has been adjudicated abused, neglected or dependent. This statute states, in relevant part:
 (A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 (4) Commit the child to the permanent custody of a public children's services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414
of the Revised Code that the child cannot be placed with one of his parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child.
Pursuant to the foregoing, a trial court's decision to grant permanent custody under R.C. 2151.353 must also be in accordance with R.C. 2151.414. R.C. 2151.414(D) first requires a court to find by clear and convincing evidence that permanent placement is in the child's best interest. Clear and convincing evidence has been defined as
 [T]hat measure or degree of proof which is more than a mere `preponderance of the evidence', but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
 Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
R.C. 2151.414(D) also mandates that the court consider all relevant evidence, including but not limited to the following factors, in order to answer the best interest inquiry:[4]
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard to the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(E) next requires a trial court to find by clear and convincing evidence that the child cannot be placed with his parents within a reasonable time or should not be placed with his parents. The court must consider whether any of the statute's enumerated factors exist in order to properly enter such a finding. If none of the factors exist, a court may not grant permanent custody to the children's services agency. In reWilliam S. (1996), 75 Ohio St.3d 95, syllabus. Said factors include:
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
We acknowledge that the termination of parental rights is a drastic measure. In In re Wise (1994), 96 Ohio App.3d 619, the Ninth District stated the following:
 The Sections of the Ohio Revised Code that govern custody matters are to be liberally construed to provide for the care, protection, and mental and physical development of children, in a family environment, when possible, separating a child from its parents only when necessary for his or her welfare.
 Id. at 624, citing In re Cunningham (1979), 59 Ohio St.2d 100. For the following reasons, we find that the trial court's decision in these cases was necessary to protect the welfare of Travis and Troy Cranston.
Regarding the best interest inquiry and the relevant factors contained in R.C. 2151.414(D), the record contains clear and convincing evidence to demonstrate that permanent custody with MCCSB was in the best interest of Travis and Troy. These children have lived in separate foster homes since January, 1995. The testimony clearly indicates that the children are in need of a secure permanent home, especially in light of their emotional, behavioral and developmental problems.
Specifically, MCCSB case worker Lora Graves testified that Travis has had to be in a "treatment" or specialized foster home since July, 1995, due to his extremely aggressive behavior[5]. Travis has also been diagnosed with Attention Deficit Hyperactivity Disorder (A.D.H.D.) for which his current foster mother, Sandra Roston, administers prescription drugs to him on a daily basis. Roston also testified that Travis has frequent nightmares and crying fits.
Travis' counselor Sophia Sparks testified that she has been seeing Travis since 1995. Although Travis has made great improvements while in foster care, he continues to experience set backs in his therapy, especially since his recent disclosure that he was sexually abused by Troy's father. Both Sparks and Graves testified that if Travis does not live in an environment that can provide him with constant structure and the proper amount of attention, his behavior will worsen. Sparks stated that she has serious concerns about Appellant's ability to provide such an environment for Travis. Julie Wirt, supervisor for the MCCSB Treatment Foster Care Program also testified that she believes Travis would not do well if he were returned to Appellant's home.
In addition to Travis' emotional and behavioral problems, both children have been classified as learning deficient. Although Travis no longer needs speech therapy, Troy continues to attend therapy sessions for language deficiencies. It is clear that the children need permanent placement and that for reasons more thoroughly discussed infra, such placement cannot be achieved with their mother.
Secure placement, however, can be achieved if MCCSB had custody of the Cranston children. For instance, Placement Services Case Worker Marsha Vlasco testified that Travis and Troy are adoptable. Although Vlasco could not specify how many families would be willing to adopt the children since she had not received the "match list" as of the date of the hearing, she stated that many families are available to adopt sibling groups and/or children with behavioral problems. Vlasco testified that Travis and Troy are more adoptable now than they were in 1995, especially since Travis' disorders have become controllable.
Further examination of the best interest inquiry requires us to consider the opinion expressed to the court by the children's Guardian Ad Litem Kevin R. Hall. In his final report, Hall stated that granting permanent custody to MCCSB would be in Travis' and Troy's best interest because "[l]eaving these children in continued temporary situation, or to return them to a home that is ill-equipped to address their special needs, will only rob them of those important formative years that require special attention."
Based upon the foregoing, we find that the trial court's determination as to the children's best interest was supported by clear and convincing evidence.
We now turn to the question of whether clear and convincing evidence exists to support the court's determination that Travis and Troy could not be placed with their mother. A complete review of the record leads us to answer in the affirmative since at least one of the enumerated factors in R.C. 2151.414(E) exists in this case. In particular, 2151.414(E)(4) is applicable because Appellant has demonstrated a "lack of commitment toward the child[ren] by failing to regularly support, visit or communicate with the child[ren] when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[ren]."
Since Travis and Troy were removed from her home, Appellant has demonstrated virtually no commitment to her children. Although Appellant recently began to attend more supervised visitations with the children, her visitation attendance prior to the spring of 1996 had been sporadic even though MCCSB frequently provided transportation for her. In addition, Graves testified that Appellant rarely showed interest in Travis' counseling sessions or Troy's speech therapy sessions. In fact, Sparks testified that Appellant has only involved herself in two of Travis' thirteen counseling sessions. Thus, the evidence establishes that Appellant has been reluctant to regularly visit her children since they have been in foster care.
More significantly, the evidence also demonstrates that Appellant has been unwilling to provide Travis and Troy with an adequate permanent home. Appellant's homelife can be described as unstable, at best. She has lived in at least eight different locations since February, 1996, and none of those apartments or homes were secured in Appellant's name. Although Appellant had the opportunity to secure subsidized Metropolitan Housing, the opportunity lapsed because Appellant failed to pay approximately $78 toward a security deposit.
Furthermore, despite the fact that Appellant is physically and mentally able to secure employment, Appellant has worked a total of three months since January, 1995. When questioned by the court about a usual day in her life, it became clear that Appellant spends a lot of her time watching television while relying on others for financial support. Appellant also stated that she continues to count on others for transportation since she has not secured a valid driver's license.
While the record demonstrates that Appellant has made some changes since January, 1995, these are minor steps toward providing Travis and Troy with the kind of homelife that they need. For example, Appellant began taking G.E.D. review classes just three weeks prior to the final hearing date. Appellant also completed parenting classes, although she declined to attend the classes that are specifically geared toward parents with A.D.H.D. children. These small efforts do not convince us that Appellant has significantly committed herself to satisfying her children's needs.
Appellant, however, argues that she has recently made a major commitment to Travis and Troy. In making this argument, Appellant relies solely on the fact that she has relocated again by moving in with Brian Johnson, her fiance and the father of her third child. Although Appellant had only known Johnson for approximately four months at the time of the final hearing, Appellant was confident that her current living situation would provide lasting security and would be conducive to Travis' and Troy's needs. We are not convinced. Nonetheless, Appellant's relationship with Johnson is of little consequence to our inquiries, especially since he is not legally bound to support Appellant or her two oldest children.
Appellant offered no evidence to illustrate to the court that she would be able to support herself and her children in the event that her non-marital relationship with Johnson did not last. Appellant could not specify as to when she would start seeking employment; she could only say it would be sometime in the spring or summer of 1998, after the birth of her third child. Indeed, Appellant's probation officer Buddy Lyles[6], testified that he doubted Appellant could ever become self-supporting due to her inability to become motivated. Thus, it is clear that Travis and Troy cannot be placed with their mother within a reasonable period of time or should not be placed with her.
Based upon the foregoing, we conclude that the trial court's decision to grant permanent custody to MCCSB was supported by clear and convincing evidence. Accordingly, Appellant's assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
SHAW, P.J., and HADLEY, J., concur.
[1] The cases were consolidated for purposes of hearing and have been consolidated for this appeal.
[2] It was alleged that Troy's father, Alan Harold, inflicted the abuse on the boys while he was residing in Appellant's home.
[3] Neither of the boys' fathers were present at the hearings. MCCSB's records indicate that Charles Hummell, Travis' father, has been incarcerated and denies paternity. The records also indicate that Alan Harold, Troy's father, could not be located.
[4] We will examine the versions of R.C. 2151.414(D) and (E) that were in effect at the time that the petitions for permanent custody was filed in July, 1996. We note that several amendments to these statutes became effective approximately two months after the motion was filed in September, 1996.
[5] Travis' aggressive behaviors include smearing feces on the walls of his former foster parents' home and killing a pregnant cat.
[6] Appellant has been on probation since 1994 when she was convicted of a felony theft offense for telephone fraud.