This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Wanda Starcher, has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, denying her motion for legal custody and granting permanent custody of her grandson, Justin Lamtman, to the Summit County Children Services Board ("CSB"). The child's parents have not appealed. This Court affirms.
CSB originally became involved with Justin because of apparent neglect of a skin condition and concerns regarding the mother's lack of interaction with the child. Accordingly, CSB filed an affidavit on April 12, 2000, alleging that Justin Lamtman, born November 22, 1999, was neglected and dependent, and sought an emergency order of temporary custody. The trial court granted emergency temporary custody to CSB and set the matter for hearing before a magistrate.
The decision of the magistrate indicated the following. The child was living with his mother, maternal grandfather, and maternal uncle. The mother was the primary caregiver. The minor father[1] was not regularly employed and was not attending school. The father was on probation from the juvenile court, upon a finding of delinquency for gross sexual imposition of a child. Justin had not been seen for medical check-ups for three months after his birth and, when he was seen by a doctor, was found to have a severe case of eczema. Medication was prescribed. At the next appointment, it was apparent that the medication had not been properly applied and that the child had not been properly bathed. Furthermore, the mother left the baby unattended on the examination table, did not bring a bottle to feed him, and left the room when he began to cry. In general, she displayed a lack of attachment toward the baby and did not interact with him. At the conclusion of the hearing, the magistrate found probable cause to continue the child in the temporary custody of CSB. A case plan was developed and the child was placed in foster care while CSB looked into potential placements with relatives.
Following this hearing, attorneys and guardians ad litem were appointed for the child and each parent. The magistrate found that appellant, the paternal grandmother, also had a right to counsel, and an attorney was appointed for her as well.
An adjudicatory hearing was conducted on July 18, 2000. The parents were found to have participated in the case plan to some extent, though compliance was poor. Both parents demonstrated difficulty in addressing the needs of the child. The parties agreed to an adjudication of dependency, and the allegation of neglect was dismissed. The court ordered the child to remain in the custody of CSB, as CSB had not identified any appropriate relatives with whom to place the child.
At the dispositional hearing, on August 24, 2000, the parties agreed to continue temporary custody in CSB. In addition, all parties, except appellant, agreed to the terms of the case plan. Appellant objected to the finding that no relative placement was found to be appropriate. The magistrate found that he had sufficient information such that it would be inappropriate to order placement of the child with appellant at that time. The magistrate further concluded that it was in the best interest of the child that he remain in the custody of CSB, and that CSB, through reasonable efforts, had been unable to prevent the continued removal of the child from his parents' care. The case plan was adopted and journalized by the court.
Ultimately, CSB moved for permanent custody, appellant moved to obtain legal custody of the child, and the mother moved for a six-month extension of time for the purpose of reunification. A hearing on all motions commenced on May 11, 2001.
Testimony was presented at the hearing as to Justin's special needs. He has extensive allergies to foods, environmental factors, and certain types of clothing. Justin's skin may safely come in contact with only cotton fabric. He requires a special diet, including special flour and special juices. Any food containing flour must be specially prepared. An environment of cigarette smoking would result in respiratory problems. Justin's medical needs require visits to an allergist and an ear, nose, and throat specialist, in addition to regular medical check-ups.
Several witnesses testified regarding the mother and the programs and services provided to her in an effort to improve her skills and her ability to parent Justin. Despite efforts to provide her with mental health counseling, parenting classes for special needs parents, and special services through the Board of Mental Retardation and Developmental Disabilities, she made little progress toward the goal of eliminating the problems that initially caused Justin to be removed. The mother told two service providers that she did not believe she was able to care for Justin and she wanted him to be adopted into a good home.
The father attended very few visitations with his son and had not provided any financial support. Witnesses testified to his temper, his aggressive nature, and his tendency to become impulsive and frustrated. The CSB caseworker testified that the father verbally threatened her. The father did not testify at the hearing. However, the father's attorney and guardian ad litem stated on his behalf, that while he was not seeking custody himself, he would like custody to be awarded to the child's mother or his own mother.
The CSB caseworker testified to several concerns in regard to the possibility of placing the child with appellant. First, every time she visited appellant's home, the child's father was present, though he was supposed to be living with relatives in Deerfield. The caseworker was concerned with the father's anger and history involving gross sexual imposition with a minor child. Also, the father had been aggressive towards both his own mother and the caseworker. The home, therefore, was not considered to be a safe place for the child. Second, appellant did not tell the caseworker about the prior criminal record of her ex-husband, with whom she was living. The caseworker learned, independently, that he had been convicted of felonious assault and kidnapping twenty years earlier. Third, everyone in the home smoked cigarettes, which put the child at risk of respiratory problems.
Appellant testified in support of her own position. While appellant explained that her efforts were directed mostly towards supporting placement of the child with his mother, she offered herself as an alternative custodian. She lives with her ex-husband and another son and, though they all smoke, she believes they could stop if she were awarded custody. She also stated that she would move to a larger apartment in that event. She testified that her ex-husband maintains employment and has had no legal problems for twenty years. She has been regularly visiting the child twice a month and believes she can provide for the child's special needs, though she has not yet fully discussed them with anyone. She began a conversation about the child's needs with the caseworker at her home on one occasion, but the child's father was present and his "attitude" caused the caseworker to leave. Appellant works at a smoke shop from 11:00 to 7:30 on weekends and it is unclear who would care for the child while she worked. Appellant had not yet investigated daycare possibilities, but concedes that the child may not be able to use daycare because of his special needs. Appellant indicated that her sister might help with the child, and was not dissuaded by the fact that her sister smokes cigarettes and marijuana on a regular basis.
The child's guardian ad litem then made a statement to the court. She indicated that Justin has many special needs because of his allergies. He requires three different kinds of cream on his skin everyday, special foods and personal care items obtainable only from specialty stores. She also stated that there was a family interested in adopting him.
She stated that the mother had told her that the child is too difficult for her to handle. She observed that the mother does not interact with the child and does not initiate physical contact with him. Furthermore, the mother does not always take direction and does not understand how offered services can help her and her effort to be reunited with Justin. She concluded her discussion of the mother by saying, "I do believe she's done the best she can do and that's all she can do."
The guardian ad litem then stated that she did not believe the father is able to care for the child because of his violent history, his financial situation, and the child's difficult needs. She also stated that the paternal grandmother's home would not be a good place for the child because of its accessibility to the father. In addition, it is a small apartment, and three of the residents smoke cigarettes, which can cause respiratory problems in the child. Even if they were able to quit smoking, the witness stated, the smoke would remain in their clothing and furniture.
At the conclusion of the hearing, the juvenile court granted CSB's motion for permanent custody of the child, denied the mother's motion for a six-month extension, and denied appellant's motion for legal custody. Appellant timely appealed. She assigns one error for review.
 Assignment of Error The trial court committed prejudicial error in granting the Summit County Children Services Board's motion for permanent custody because it failed to consider all five factors enumerated in Ohio Revised Code Section 2151.414(D) in determining the best interest of the child.
Appellant does not dispute the juvenile court's determination that the child could not be placed with his parents within a reasonable time or should not be placed with his parents. R.C. 2151.414(B)(1). Rather, appellant contends that the juvenile court erred in failing to adequately consider the five listed factors of the best interest standard set forth in R.C. 2151.414(D). This Court will consider these factors insofar as they represent a consideration of the best interest of the child.[2]
In determining the best interest of the child, R.C. 2151.414(D) directs the court to consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D). In general, the decision of a juvenile court regarding custody of child is accorded great discretion. Such a decision will be reversed only upon a finding that the trial court has acted in a manner that is arbitrary, unreasonable or capricious. In re Awkal (1994),95 Ohio App.3d 309, 316. This Court will address appellant's arguments regarding each factor of R.C. 2151.414(D) and then consider the decision of the juvenile court against this standard.
Appellant first contends that the trial court did not adequately
consider the interaction or interrelationship of the child with the foster parents or other potential relatives as caregivers. R.C.2151.414(D)(1) directs the juvenile court to consider the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, out-of-home providers, and any other person who may significantly affect the child. The trial court found that the interaction and interrelationship between the child and his parents was poor. The mother had difficulty interacting, stimulating, and nurturing the child during visitations. She was not observed to kiss or hug the child and was frequently unable to comfort his crying. The father demonstrated a lack of commitment toward the child by failing to support, visit, or communicate with him.
As to appellant, while her visitations with the child were said to go well, she expressed a desire to obtain legal custody of Justin, and she was actively involved in this case, other evidence established that there were difficulties with such a placement. Testimony indicated that appellant was aware of the condition of the child at the time of the original referral. Other evidence before the juvenile court indicated that appellant's apartment was small, the child's father was often present, and appellant's home was a smoking environment, which would be dangerous to the health of the child.
Appellant had an opportunity at the hearing to testify about members of her household or extended family that might interrelate with the child or were potential caregivers. However, there is no evidence that other relatives offered viable placement alternatives. Indeed, when asked to name a substitute caregiver for the child during her work hours, appellant could only suggest one relative, who smoked regular cigarettes as well as marijuana cigarettes.
On the other hand, the child's guardian ad litem and the CSB caseworker both testified that the foster parents were meeting the needs of the child, including his health needs, and that the child was doing well in their care. Evidence was presented which indicated that Justin appeared to be age-appropriate in his development, had a good disposition, and was secure in his environment. Therefore, the record does not support appellant's contention that the trial court failed to adequately consider the interaction and interrelationship of the child with his relatives, and foster parents.
Second, appellant contends that the juvenile court failed to consider the wishes of the child as expressed through the guardian ad litem. The judgment entry of the court stated that the child's guardian ad litem
recommended that the child be placed in the permanent custody of CSB. Appellant contends that the guardian ad litem did not explicitly state the conclusion that the child should be placed in the permanent custody of CSB during the hearing below.
A summary of the report of the child's guardian ad litem is set forth above. She clearly found placement with the mother, father, and grandmother to be inappropriate, and she also indicated that a family was interested in adopting the child. Under these circumstances, this Court finds that the juvenile court did not err in concluding that the guardianad litem believed that permanent custody should be awarded to CSB.
Third, appellant contends that the trial court failed to consider the custodial history of the child prior to being placed in the custody of CSB. Appellant relies upon the juvenile court's statement that the child was placed in the temporary custody of CSB on August 29, 2000, following the dispositional hearing, and suggests that the court had nine months of history to consider. However, the record demonstrates that the child was placed in the emergency temporary custody of CSB on April 12, 2000, and remained in the custody of CSB until the conclusion of the hearing on permanent custody. This leaves only the first four and one-half months of the child's life during which he was in the custody of his mother and of which appellant seeks consideration.
The journal entry indicates that the trial court reviewed and considered the evidence of a referral regarding this child made on April 10, 2000. The journal entry indicates that child had not been properly bathed and had a severe skin condition at that time. The journal entry further indicates that there was concern regarding the mother's lack of interaction with the child. These comments upon the health and cleanliness of the child and upon the relationship of the mother and child indicate consideration by the juvenile court of factors relevant to the period of time while the child was in the custody of his mother.
In regard to the period of time when the child was in the custody of CSB and in foster care, the trial court observed that the child's basic needs were being met. This conclusion is supported by the testimony of the CSB caseworker and medical personnel. The record does not support appellant's contention that the trial court failed to consider the custodial history of the child.
Fourth, appellant contends the trial court did not adequately consider placing the child with relatives, and in particular with her, as a means of achieving a legally secure placement without a grant of permanent custody to CSB. The only relative to seriously present as a potential custodian of the child was appellant. Appellant expressed a desire to have custody of Justin and believed she could provide for the child. The CSB caseworker and the child's guardian ad litem testified that appellant's visitations with the child went very well and were appropriate.
However, there was additional information before the court that created serious obstacles to this placement. Those obstacles could be seen to raise concerns as to the child's physical safety and health. While appellant stated that she believed she could care for the child, she offered no concrete plan for the care of the child while she was working. In addition, given the child's health issues, unaccomplished promises to stop smoking fail to offer the type of reliability that is needed in this situation. Finally, appellant herself testified regarding the difficult problem created by the fact that she remains the mother of Justin's father. Having custody of Justin would confront her with a most difficult dilemma and one to which she could offer no resolution that would insure the safety of Justin. In the end, Justin's safety and health were central to the question before the juvenile court. The record does not support appellant's contention that the court's consideration of this factor was inadequate.
Fifth, appellant contends that, because the father had been charged with gross sexual imposition involving a minor child in violation of R.C. 2907.05, the court was obliged to consider further evidence regarding the charge. The argument is curious, at best, and without merit, in any event. R.C. 2151.414(E)(7) invites consideration of the fact that a parent has been convicted or pleaded guilty to such a charge. However, the statute invites such consideration only where the victim of the offense was the subject child, a sibling of the child, or another child living in the parent's household at the time of the offense. There is no evidence that such was the case here and appellee submits that it was not, in fact, the case in the present matter. Therefore, this is not a "relevant" factor, requiring consideration under R.C. 2151.414(D).
Furthermore, absent some proffer, it is difficult to understand how additional evidence of the natural father's involvement in a charge of gross sexual imposition would alter the finding that it was in the best interest of the child to be placed in the permanent custody of CSB. It does not appear from the record that the father was seeking custody of the child. Indeed, much effort was devoted to distancing him from those who did seek custody of the child. If there was evidence suggesting that the father was not guilty of the charge or that there was some mitigating circumstance, then that evidence should have been presented at the hearing below. It cannot be suggested for the first time on appeal.
Accordingly, this Court finds that appellant has not established that the trial court failed to adequately consider evidence on factors relevant to the question of the best interest of the child. Furthermore, this Court finds that the juvenile court did not abuse its discretion in determining that the best interest of the child was to deny appellant's motion for legal custody and place Justin in the permanent custody of CSB. Appellant's sole assignment of error is, therefore, overruled. The judgment of the juvenile court denying appellant's motion for legal custody, terminating all parental rights, and granting permanent custody of the child to CSB is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
SLABY, P.J., WHITMORE, J. CONCUR.
[1] Paternity had not yet been determined at this time, but was established later in these proceedings.
[2] In addressing appellant's arguments on these points, this Court does not necessarily adopt the factors of R.C. 2151.414(D) as the standard in regard to the determination of legal custody of a child pursuant to R.C. 2151.353(A)(3). This Court will consider the appellant's arguments, however, insofar as they represent a consideration of the best interest of the child, which remains the controlling principle in all matters of child custody. See In re Baby Girl Baxter (1985),17 Ohio St.3d 229, 233; In re Cunningham (1979), 59 Ohio St.2d 100,106.