OPINION
This timely appeal arises from a decision of the Jefferson County Court of Common Pleas, Juvenile Division, terminating the parental rights of Appellant Duane Sims. It appears from the record that the trial court did not specifically adopt an October 11, 2001, magistrate's decision and did not expressly grant permanent custody of the minor child to the Jefferson County Children Services Board ("JCCSB"). Based on this, the matter must be reversed and remanded for a more detailed judgment entry and other proceedings according to law and consistent with this Court's Opinion.
Rose Sims ("Rose"), born on June 16, 1992, is the daughter of Peggy Sims Birden ("Ms. Sims") and Appellant. From 1988 to 1994, Appellant fathered six children by three different mothers. Appellant had custody of all six children. On August 22, 1998, domestic violence charges were filed against Appellant for hurling one of his children into a stove. On August 31, 1998, the JCCSB filed a complaint against Appellant alleging that Rose was an abused and dependent child pursuant to R.C. §2151.031(D) and § 2151.04(C). Similar complaints were filed on behalf of the other children. All the children were removed from Appellant's home and put into the temporary custody of JCCSB. Rose was soon placed into a foster home.
On March 17, 1999, Rose was adjudicated as an abused and dependent child.
Appellant was in jail from August 22, 1998, until December 1, 1999. He was then incarcerated due to a parole violation from August 24, 2000, until February 21, 2001. (Tr., 17).
On August 3, 2000, JCCSB filed a motion seeking permanent custody of Rose. A magistrate's hearing on the motion was held on April 5, 2001. Kim Bryant, the JCCSB caseworker assigned to the case, and Appellant testified at the hearing.
On October 11, 2001, the magistrate filed his order. The magistrate once again found that Rose was a dependent child and that Ms. Sims agreed that JCCSB should have permanent custody of Rose. The magistrate found that Appellant's alcohol problems, his acts of domestic violence and his incarceration caused Rose to be a dependent child. The magistrate found that Appellant had not complied with his case plan for over a year and half and had not completed counseling. The magistrate found that no relative of Rose had filed for custody. Based on the above, the magistrate also determined it was in Rose's best interest to terminate both parents' parental rights.
On December 19, 2001, the trial court granted Appellant leave to file delayed objections to the magistrate's order. On December 19, 2001, Appellant filed his objections. Appellant's primary objection appeared to be that the court had not terminated his parental rights with respect to any of his other five children, and that Rose was being singled out and would lose contact with her siblings.
On January 10, 2002, the trial court filed the following Journal Entry:
"Written Objections of Magistrate's Decision of Adjudication and Disposition, filed December 19, 2001 by [Appellant's] Attorney Shawn M. Blake, are OVERRULED. Parental Rights of the parents are terminated."
Appellant filed this timely appeal on February 8, 2002.
Appellant's sole assignment of error asserts:
 "THE MAGISTRATE'S DECISION AND THE JUVENILE COURT'S AFFIRMATION OF SAID DECISION, WHICH TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT, WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that parents have a constitutionally protected interest in the care and custody of their children, citing Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. Appellant acknowledges that a juvenile court's decision regarding permanent custody should only be overturned if the court abused its discretion, citing In re Piper's Children (1993), 85 Ohio App.3d 318,330, 619 N.E.2d 1059. Appellant contends that an order terminating parental rights must be in the best interests of the child and must be supported by clear and convincing evidence, citing R.C. § 2151.414(B) and (E).
Appellant asserts that the court must consider the factors listed in R.C. § 2151.414(D) when deciding whether to terminate parental rights. R.C. § 2151.414(D) states, in pertinent part:
"(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
Appellant's main argument is that the trial court failed to consider R.C. § 2151.414(D)(1), namely, the impact on Rose of the anticipated loss of contact with her siblings. Appellant argues that he will potentially regain custody of his other five children, but that Rose will never have the opportunity to come home and rejoin her sisters and brothers if he loses all custody rights. Appellant brings to the Court's attention the fact that he had prior custody of all the children from 1993 to August 1998. He admits that JCCSB had a prior casefile opened with regard to these children, but somehow feels that the fact that JCCSB determined that it was proper to close the file in early 1998 is a fact that operates in his favor and that these facts are sufficient to overturn the trial court's decision.
A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, citing Stanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208,31 L.Ed.2d 551. Parents have a fundamental liberty interest in the care, custody and management of their children. Troxel v. Granville (2000),530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49; Santosky v. Kramer,
supra, 455 U.S. at 753, 102 S.Ct. 1388, 71 L.Ed.2d 599.
Nevertheless, the rights and interests of the natural parents are not absolute. In re Awkal (1994), 95 Ohio App.3d 309, 315, 642 N.E.2d 424. The state may terminate the parental rights of the natural parents if the welfare of the child requires it. In re Cunningham (1979),59 Ohio St.2d 100, 105, 391 N.E.2d 1034; In re Wise (1994),96 Ohio App.3d 619, 624, 645 N.E.2d 812. The termination of parental rights must be the alternative of "last resort" in protecting the welfare of children. In re Cunningham, supra, at 105, 391 N.E.2d 1034.
R.C. § 2151.353 specifically allows a trial court to grant permanent custody of a minor child to a children's services agency if it is necessary for the welfare of the child and if the parents are found to be unfit:
"(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *
"(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determinesin accordance with division (E) of section 2151.414 of the Revised Codethat the child cannot be placed with one of the child's parents within areasonable time or should not be placed with either parent and determinesin accordance with division (D) of section 2151.414 of the Revised Codethat the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding." (Emphasis added.)
According to R.C. § 2151.353, in order for the court to grant permanent custody to a children's services agency, the court must first consider both the best interests of the child; using the factors found in R.C. § 2151.414(D) and whether the child should or could not be placed with either parent within a reasonable amount of time, using the factors found in R.C. § 2151.414(E). R.C. § 2151.414(D) contains, as listed above, five nonexclusive factors the trial court must consider in determining the best interests of the child. R.C. §2151.414(E) contains sixteen factors relating to whether the child should not or could not be placed with the parents in a reasonable amount of time.
An alternative basis for awarding permanent custody to a children's services agency is contained in R.C. § 2151.414(B)(1):
"Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
"(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
"(b) The child is abandoned.
"(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
"(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
R.C. § 2151.414(B)(1)(a) contains the same requirements as R.C. § 2151.353, in that the court must find that the transfer of custody is in the best interests of the child and must find a specific reason why the natural parents have not had, or should not have, custody; i.e., the parents are unfit. R.C. § 2151.414(B)(1)(b) and (c) eliminate the "unfitness" requirement where the child is found to be orphaned or abandoned. R.C. § 2151.414(d), which was added to the statute effective March 18, 1999 eliminates the requirement that the parent be specifically found "unfit" when a child has been in the custody of a children's services agency for at least twelve months in a twenty-two month period.
A court's decision terminating parental rights and responsibilities is reviewed for an abuse of discretion. In re Awkal, supra,95 Ohio App.3d at 316, 642 N.E.2d 424. A reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
Because the trial court's decision in the instant case was based on a prior order of a magistrate, the rules governing the disposition of magistrates' decisions also apply to this case. Juv.R. 40(E) states, in pertinent part:
"(4) Court's action on magistrate's decision
"(a) When effective. The magistrate's decision shall be effective whenadopted by the court as noted in the journal record. The court may adopt the magistrate's decision if no written objections are filed unless it determines that there is an error of law or other defect on the face of the magistrate's decision.
"(b) Disposition of objections. The court shall rule on anyobjections. The court may adopt, reject, or modify the magistrate'sdecision, hear additional evidence, recommit the matter to the magistratewith instructions, or hear the matter itself. In delinquency, unruly, or juvenile traffic offender cases, the court may hear additional evidence or hear the matter itself only with the consent of the child. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration."
The trial court's January 10, 2002, Journal Entry did not specifically adopt, reject or modify the October 11, 2001, Magistrate's Order. Juv.R. 40 does not mandate that the juvenile court take any particular action with respect to a magistrate's decision. Nevertheless, the fact that a magistrate has prepared and filed its decision is, ipso facto, a request for the juvenile court to dispose of the decision according to the options presented by Juv.R. 40. Generally, when a court is requested to approve a motion, but proceeds to judgment without ruling on the request, the presumption is that the court has overruled or rejected the request. See, e.g., State ex rel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467,469, 692 N.E.2d 198.
The juvenile court in this case entered judgment without ruling on the magistrate's decision. Therefore, the trial court's judgment can be seen as a rejection of the magistrate's decision. Without the magistrate's decision to support the judgment, it stands "bare," with no findings or analysis to support it. Therefore, the record as it stands does not support a finding that the trial court considered the best interest factors listed in R.C. § 2151.414(D) or the "fitness" factors listed in R.C. § 2151.414(E), as required by R.C. § 2151.414(B)(1)(a) or R.C. § 2141.353. Nor, in the alternative, is there any determination that the child was abandoned, orphaned, or in the custody of a children's services agency for more than twelve months, as required by R.C. §2151.414(B)(1)(b)-(d).
In addition, neither the October 11, 2001, magistrate's order nor the January 10, 2002, Judgment Entry explicitly place Rose in the permanent custody of JCCSB. Both court orders simply terminate the parental rights of Rose's parents. Neither R.C. § 2151.353 nor R.C. § 2151.414
provides a mechanism for the juvenile court merely to terminate parental rights. The statutes permit the court to transfer permanent custody to a children's services agency or another person. The effect of that transfer is to permanently divest the parents of their parental rights. In reFassinger (1975), 42 Ohio St.2d 505, 330 N.E.2d 431, syllabus. Thus, where the juvenile court terminated parental rights without explicitly granting permanent custody to another person or agency, it is an ultra vires act by the court, as it is not provided for in the juvenile statutes.
In so holding, we recognize that the aforementioned discussion is based on procedural technicalities. Based on the magistrate's decision, the record and the applicable law, Appellant's stated arguments appear to otherwise fail. However, we also recognize that the gravity of the rights at stake require the trial court to meticulously follow the procedural details set forth in the juvenile rules and statutes.
Based on the above, because the January 10, 2002, judgment entry does not adopt the April 5, 2001, decision of the magistrate and the trial court's judgment entry by itself is insufficient to support the termination of Appellant's parental rights, the matter is reversed and this case remanded. If, as it appears, the trial court intends to adopt the magistrate's decision and to place Rose in the permanent custody of JCCSB, the judgment entry must so specify and the trial court should particularly note the requirements of R.C. § 2151.353 and §2151.414.
Vukovich, P.J., concurs.
DeGenaro, J., concurs in part and dissents in part; see concurring in part and dissenting in part opinion.