OPINION
{¶ 1} Appellant, Guy Mansfield, filed this appeal from the judgment entered in the Tuscarawas County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of the Appellant with regard to Appellant's minor child, Genesee Mansfield, and ordered that permanent custody of the minor child be granted to the Tuscarawas County Department of Job and Family Services (hereinafter the Department).
 {¶ 2} This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 3} This appeal pertains to the disposition of permanent custody of Genesee Mansfield whose date of birth is December 14, 2004. Appellant Guy Mansfield is the natural father of Genesee Mansfield. Anita Mansfield is the natural mother of Genesee Mansfield and Katelynn Definbaugh. Charles Lyons is the natural father of Katelynn Definbaugh.
 {¶ 4} On January 25, 2005, the Department filed a complaint alleging that Genesee Mansfield and Katelynn Definbaugh were neglected and dependent and requested temporary custody of the children.
 {¶ 5} The facts which gave rise to the filing of the Complaint involved a domestic violence incident which occurred on January 22, 2005. During the incident, and in the children's presence, Anita Mansfield broke several windows in the family home and substantially threatened the health, safety and welfare of the minor children. That same date, pursuant to Juv.R.6, the children were removed from the care of Anita Mansfield and Appellant Guy Mansfield.
 {¶ 6} On February 23, 2005, at the adjudicatory hearing, upon motion by the Department, the trial court dismissed the neglect allegation, and amended the dependency allegation. Thereafter, Appellant and Anita Mansfield voluntarily stipulated to a finding of dependency. After the stipulations were accepted, the trial court found the children to be dependent pursuant to R.C.2151.04, and further ordered the children to remain in the temporary custody of the Department with supervised visitation. Case plans were approved and adopted for both parents. Appellant's case plan included as follows: the successful completion of a parent education class; continued psychiatric care; an alcohol and drug assessment and participation in recommended treatment; an anger management assessment and participation in recommended treatment; appropriate housing and employment.
 {¶ 7} On or about May 12, 2005, the parents' supervised visits were suspended in accordance with Department policy to suspend visits after three scheduled visits have been missed and because the parents relocated to Phoenix, Arizona.
 {¶ 8} In June of 2005, the children were moved to a new foster home due to the Department's concern that a more permanent placement would be necessary. The children remained in the foster placement until the permanent custody hearing.
 {¶ 9} On September 19, 2005, the Department moved to resume supervised visitation. In the motion, the Department stated that visitation should resume because the parents had demonstrated a commitment to case plan services. On September 20, 2005, the trial court ordered visitation to resume.
 {¶ 10} After the trial court ordered resumed visitation, Appellant appeared in court for a probation violation. During the court appearance, Appellant threatened the Tuscarawas County Judge. As a result, the Judge imposed a prior suspended sentence and Appellant was incarcerated for ninety days, from September 2005 until January 2006.
 {¶ 11} On November 22, 2005, the Department moved to modify the court's prior disposition from temporary custody to permanent custody. As grounds, the Department stated that "both parents have substantially failed to alleviate conditions leading to the removal and placement of their children in the agency's temporary custody for a period in excess of six months."
 {¶ 12} On March 23, 2006, the Attorney Guardian Ad Litem filed a guardian's report. In the report, the guardian concluded that "the children are young and deserve the stability of committed parents". The guardian further stated, "For this reason I believe, at this time, it is in Katelyn and Genesee's best interest to be placed in the permanent custody of the Department".
 {¶ 13} An evidentiary hearing with regard to the motion for permanent custody was held on March 23, 2006.
 {¶ 14} On March 28, 2006, via judgment entry, the trial court granted permanent custody of Katelynn Definbaugh and Genesee Mansfield to the Tuscarawas Department of Job and Family Services.
 {¶ 15} It is from this decision that Appellant-Father of Genesee Mansfield appeals, assigning the following error for review:
 ASSIGNMENT OF ERROR: {¶ 16} "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES ABSENT CLEAR AND CONVINCING EVIDENCE THAT SUCH AN AWARD WAS IN THE BEST INTEREST OF THE CHILD."
 {¶ 17} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 I. {¶ 18} Appellant, in his Assignment of Error, argues that the trial court erred in granting permanent custody to the Department absent clear and convincing evidence that permanent custody was in the child's best interest.
 {¶ 19} A parent has a "fundamental liberty interest in the care, custody, and management of his or her child" Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed.2d 599. The Ohio Supreme Court has stated that "[p]ermanent termination of parental rights has been described as `the family equivalent of the death penalty in a criminal case' * * * Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" In re Hayes (1997),79 Ohio St.3d 46, 48, 679 N.E.2d 680 quoting In re Smith (1991),77 Ohio App.3d 1, 16, 601 NE.2d 45. However, the parent's rights are not absolute. Instead, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principal to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100, 106,391 N.E.2d 1034, quoting In re R.J.C. (Fla.App. 1974), 300 So.3d 54, 58. Accordingly, the state may terminate parental rights when the child's best interest demands such action. In reShifflet, Athens County App. No. 06CA13, 2006-Ohio-3576.
 {¶ 20} There are two ways that an authorized agency may seek to obtain permanent custody of a child under Ohio law. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint. See R.C. 2151.413, R.C. 2151.27(C), and2151.353(A)(4). In this case, the Department filed a motion seeking permanent custody pursuant to R.C. 2151.353(A)(4) as the original disposition.
 {¶ 21} Pursuant to R.C. 2151.35 and Juv.R.29 and 34, proceedings involving the termination of parental rights must be bifurcated into separate adjudicatory and dispositional hearings. See, In re Baby Girl Baxter (1985), 17 Ohio St.3d 229,479 N.E.2d 257. Once a court adjudicates a child abused, neglected or dependent, R.C. 2151.353(A)(4) permits the court to commit a child to the permanent custody of a public children service agency "if the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child."
 {¶ 22} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. The statute states in relevant part as follows:
 {¶ 23} "In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent within a reasonable period of time, the court shall consider all relevant evidence. If the court determines by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent:
 {¶ 24} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problem that initially caused the child to be paced outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parent utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * *
 {¶ 25} "(4) the parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child. * * *
 {¶ 26} (16) Any other factors the court considers relevant." See, R.C. 2151.414(E)
 {¶ 27} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C.2151.414(D). These factors are as follows:
 {¶ 28} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 29} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 30} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;
 {¶ 31} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 33} In this case, the trial court found that the minor child could not be placed with either parent at this time or within a reasonable period of time. The trial court further found that the grant of permanent custody was in the minor child's best interest. Essentially, Appellant contends that the trial court's decision is against the manifest weight of the evidence. We disagree.
 {¶ 34} In the case sub judice, despite diligent efforts on the part of the agency, Appellant and Anita Mansfield repeatedly failed to remedy the problems which led to the removal of the Appellant's child, Genesee Mansfield.
 {¶ 35} In the statement of facts and conclusions of law the trial court found and the record supports that despite diligent efforts by the Department, Anita Mansfield repeatedly failed to complete her case plan services. At the time of the permanent custody hearing Anita Mansfield was unemployed with no source of income and admitted during her testimony that she was barely able to care for her own needs. She stated that marijuana use was an ongoing concern. The trial court found that Ms. Mansfield's cognitive and emotional deficits are significant. Furthermore, Ms. Mansfield had failed to provide support or exercise visitation with Genesee for almost twelve months. Finally, Ms. Mansfield was arrested at the termination of the hearing on a warrant issued by another court. Ms. Mansfield did not pursue an appeal of the trial court's permanent custody decision.
 {¶ 36} With regard to Appellant, Guy Mansfield, the ongoing caseworker testified that Appellant was under psychiatric care when the case plan was drafted and was ordered to continue with treatment. She further stated that Appellant was ordered to complete any treatment recommended as a result of his anger management, and drug and alcohol assessments which were ordered due to concerns of cocaine and marijuana dependence. She stated that she had advised Appellant that residency with his mother, Dawn Rickey, was not considered appropriate housing due to Ms. Rickey's history with the Department. The caseworker also advised Appellant that he was ordered to obtain and maintain employment.
 {¶ 37} In reviewing the Appellant's case plan compliance, the caseworker testified that during the course of the case plan, Appellant moved to Arizona without prior notification to the Department, discontinued treatment and was incarcerated for ninety days. She stated that prior to moving to Arizona, upon his return from Arizona, and after his release from prison, Appellant's involvement in treatment programs was at best sporadic and inconsistent. She stated that Appellant continued to live with his mother. Additionally, Appellant admitted during testimony that residency with his mother was inappropriate for his daughter. Furthermore, the caseworker testified that Appellant had not exercised any visitation with his infant daughter in almost twelve months. She stated that neither parent was in a position to provide care and support for Genesee and all relative placements had been exhausted. Finally, She stated that she believed that although Appellant may be capable of making better choices, she did not believe that he was able to complete a case plan and was essentially unable to remedy the problems which led to the request for permanent custody.
 {¶ 38} With regards to the child's best interest, the caseworker testified that Genesee is adoptable. She stated that, at approximately one month of age, the child had been placed in foster care with her sister Katelyn and that the foster parents were willing to adopt the sisters. The caseworker stated that the child did not have a bond to either Appellant or Anita Mansfield, but had become strongly bonded to the foster parents. The Guardian Ad Litem stated in her report that the child needs a stable home environment with committed parents, which the Appellant and Anita Mansfield are unable to provide. The Guardian Ad Litem further stated that a grant of permanent custody to the Department was in the child's best interest.
 {¶ 39} We find that the trial court's finding that the best interests of the child would be served by granting permanent custody to the Tuscarawas Department of Job and Family Services was not against the manifest weight of the evidence.
 {¶ 40} We find the evidence to be substantial and credible that is in the child's best interest to be provided with a safe and stable home environment, which can only be available through permanent custody.
 {¶ 41} Upon review, we find that the trial court had clear and convincing evidence before it to grant the Tuscarawas Department of Job and Family Services permanent custody of the child.
 {¶ 42} Appellant's Assignment of Error is overruled.
 {¶ 43} In conclusion, for the foregoing reasons, we find that the trial court's award of permanent custody to SCDJFS was not against the manifest weight of the evidence.
 {¶ 44} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed.
By: Boggins, J., Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed.