In re Cunningham, a Dependent Child.

[Cite as In re Cunningham (1979), 59 Ohio St. 2d 100.]

(No. 78-1271—Decided July 18, 1979.)

Mr. *Kennedy Clare Sharrock,* for appellant Lucas County Children Services Board.

Mr. *Jay Jeffrey Lowenstein,* guardian *ad litem,* for appellant Shannon Cunningham.

Mr. *Morton E. Leveton,* for appellee William Cunningham.

CELEBREZZE, C. J. The sole issue raised on this appeal is whether the Court of Appeals erred in modifying the dispositional order of the trial court. More specifically, the question is whether *after* there has been an adjudication and finding of "dependency," as defined in R. C. 2151.04 (A), a Juvenile Court judge, as a prerequisite to an award of permanent custody pursuant to R. C. 2151.353(D), is required to make a separate finding of parental unfitness. Although the Court of Appeals answered that question in the affirmative we find no such mandatory requirement in the pertinent statutory language or applicable case law.

R. C. 2151.353 gives the trial judge four alternatives to choose from after there has been a prior determination of dependency. The statute reads, in pertinent part:

"If the child is adjudged an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

"(A) Permit the child to remain with his parents, guardian, or other custodian, subject to such conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child;

"(B) Commit the child to the temporary custody of the department of public welfare, a county department of welfare which has assumed the administration of child welfare, county children services board, any other certified organization, the Ohio youth commission for the purpose

of diagnostic study and report as provided by 'division (B) of section 5139.05 of the Revised Code, either parent or a relative residing within or outside the state or a probation officer for placement in a certified foster home;

"(C) Commit the child to the temporary custody of any institution or agency in this state or 'another state authorized and qualified to provide the care, treatment, or placement that the child requires;

"(D) Commit the child permanently to the county department of welfare which has assumed the administration of child welfare, county children services board, or to 'any other certified agency. Upon such commitment the natural or adoptive parents are divested of all legal rights and obligations due from them to the child or from the child to them."

The complaint filed on January 11, 1977, sought both a judicial finding of dependency, as defined in R. C. 2151.-04(A), and a change of custody from temporary to permanent, as permitted by R. C. 2151.353(D). The referee conducted a hearing on those two issues and his recommendation that Shannon be found "dependent" was adopted by the trial judge and affirmed on appeal. Therefore, we are not concerned with that determination since both courts below concluded that it had been proven by the requisite "clear and convincing evidence." See Juv. R. 29 (E)(4).'

We are concerned only with the dispositional order of the trial judge and the standards necessary to justify an award of permanent custody. As evidenced by the aforementioned statutory language, there is no explicit requirement in R. C. 2151.353(D) that a finding of parental unfitness is a prerequisite to its implementation. However,

---

'Juv. R. 29 reads, in pertinent part:

"(E) *Initial procedure upon entry of a denial.* If a party denies the allegations, the court shall:

"* * *

"(4) Determine the issues by proof beyond a reasonable doubt in juvenile traffic offense, delinquency, and unruly proceedings, by clear and convincing evidence in dependency, neglect, and child abuse proceedings, and by a preponderance of the evidence in all other cases."

it is also obvious that the option presented to a judge in that section is the most serious of the dispositional alternatives.

This particular alternative is so severe because we are dealing with the termination of those "[r]esidual parental rights, privileges, and responsibilities" held by William Cunningham under the previous orders granting and affirming the award of temporary custody to the Lucas County Children Services Board.⁴ An award of permanent custody to the board will terminate the natural father's relationship with his daughter to the extent outlined in R. C. 2151.011(B)(12), which reads: " 'Permanent custody' means a legal status created by the court which vests * * * all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of any and all parental rights, privileges, and obligations, including all residual rights and obligations."

A judicial reluctance to grant such an award is in recognition of the importance of maintaining the family unit and protecting the parental rights associated with that unit. The United States Supreme Court in *Stanley* v. *Illinois* (1972), 405 U. S. 645, at page 651, reiterated that same concern when it indicated the following:

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer* v. *Nebraska*, 262 U. S. 390, 399 (1923), 'basic civil rights of man,' *Skinner* v. *Oklahoma*, 316 U. S. 535, 541 (1942), and '[r]ights far more precious * * * than property rights,' *May* v. *Anderson*, 345 U. S. 528, 533 (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince* v. *Massachusetts*, 321 U. S. 158, 166 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer* v. *Nebraska*, *supra*, at 399, the Equal Protection

⁴See fn. No. 2, *supra*.

Clause of the Fourteenth Amendment, *Skinner* v. *Oklahoma, supra*, at 541, and the Ninth Amendment, *Griswold* v. *Connecticut*, 381 U. S. 479, 496 (1965) (Goldberg, J., concurring)."

A recognition of the importance of maintaining a cohesive family unit, whenever possible, is found in R. C. 2151.01. The statute states that the provisions of R. C. Chapter 2151 should be liberally construed and interpreted to effectuate the purpose of "provid[ing] for the care, protection, and mental and physical development of children." (R. C. 2151.01[A].) Division (C) indicates further that the foregoing purpose should be achieved "whenever possible, in a family environment, separating the child from its parents *only* when necessary for his welfare or in the interests of public safety." (Emphasis added.)

Although the termination of the rights of a natural parent should be an alternative of "last resort," such an extreme disposition is nevertheless expressly sanctioned by the foregoing when it is necessary for the "welfare" of the child.[5] Therefore, with the purposes outlined in R. C. 2151.01 in mind, we conclude that an award of permanent custody, pursuant to R. C. 2151.353(D), is only justified when it is in the "best interests" of the child. Such an interpretation of the statute is consistent with the time-honored precedent in this state that the "best interests" of the child are the primary consideration in questions of possession or custody of children. See, *e. g., Gishwiler* v.

---

[5]This court has examined the provisions of R. C. 2151.353 in the past in, *In re Fassinger* (1975), 42 Ohio St. 2d 505, where we noted the importance of apprising the natural parents of the ramifications of an award of permanent custody. The syllabus in that decision holds as follows:

"Under R. C. 2151.353, the filing of a complaint containing a prayer requesting permanent custody of minor children, sufficiently apprising the parents of the grounds upon which the order is to be based, and the service of summons upon the parents, explaining that the granting of such an order permanently divests them of their parental rights, are prerequisite to a valid adjudication that a child is neglected or dependent for the purpose of obtaining an order for permanent custody divesting parental rights."

*Dodez* (1855), 4 Ohio St. 615; *Clark* v. *Bayer* (1877), 32 Ohio St. 299; *Children's Home of Marion County* v. *Fetter* (1914), 90 Ohio St. 110, 127; *In re Tilton* (1954), 161 Ohio St. 571; *In re Christopher* (1977), 54 Ohio App. 2d 137; *In re Baby Girl S.* (1972), 32 Ohio Misc. 217; *In re Turner* (1967), 12 Ohio Misc. 171.[6]

Thus the *fundamental* or *primary* inquiry at the dispositional phase of these juvenile proceedings is not whether the parents of a previously adjudicated "dependent" child are either fit or unfit. The mere fact that a natural parent is fit, though it is certainly one factor that may enter into judicial consideration, does not *automatically* entitle the natural parent to custody of his child since the best interests and welfare of that child are of paramount importance. *Willette* v. *Bannister* (Ala. Civ. App. 1977), 351 So. 2d 605, 607. Parental interests must be subordinated to the child's interest in determining an appropriate disposition of any petition to terminate parental rights. *In re Perkins* (Ind. App. 1976), 352 N. E. 2d 502, 509.

As it has been perceptively noted elsewhere, "it is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re R. J. C.* (Fla. App. 1974), 300 So. 2d 54, 58.

Moreover, the concepts of "parental unfitness" and "best interests" of the child are not always unrelated issues, and very often a consideration of the former may enter into the analytical process of ascertaining the latter.[7]

---

[6]For a listing of the various other states that employ a "best interests" analysis as the appropriate dispositional standard, see Mnookin, Child-Custody Adjudication: Judicial Functions in the Face of Indeterminacy, 39 Law & Contemp. Probs., No. 3, 226, 243, at fn. 81 (Summer 1975).

[7]Justice William B. Brown commented on the overlapping concerns of these two concepts in *In re Perales* (1977), 52 Ohio St. 2d 89, 96-97, in footnote No. 9 as follows:

"* * * Most courts dealing with the parental versus third-party custody issue profess to choose between the 'best interest' of the child doctrine and the 'parental right' doctrine. Under the former, custody is awarded in accordance with best interests of the child regardless of

The court in *Petition of New England Home for Little Wanderers* (1975), 367 Mass. 631, 636-637, 328 N. E. 2d 854, noted that overlap as follows:

"While we find force in the mother's arguments, we believe they are based essentially on a misunderstanding of the relationship between the notions of 'best interests of the child' and parental 'unfitness.' The mother perceives the two criteria or tests as separate and distinct, with each to be applied in certain clearly defined circumstances. We think that the relationship is more subtle, that elements of parental 'unfitness' figure strongly in the 'best interests' test, while elements of 'best interests of the child' weigh in any consideration of whether a parent is fit to have custody of his child."

It is also important to note that a consideration of the "best interests" of the child should not enter into the initial factual determination of dependency. It becomes a proper focus only when the emphasis has shifted to a consideration of the statutorily permissible dispositional alternatives.

The proceeding that took place before the referee herein was both an adjudicatory hearing to make the initial factual finding of dependency as well as a dispositional

---

the fitness of the parents. Under the latter, parents are entitled to the custody of their children unless it 'clearly appears that they are unfit or have abandoned their right to the custody or unless there are some extraordinary circumstances which require that they be deprived of custody.' Annotation, Child Custody—Parent or Grandparent, 31 A. L. R. 3d 1187, 1191, 1196. The importance of those doctrines and the names attached to them has probably been overestimated. Although jurisdictions professing to consider only the welfare of the child may not require a finding of unsuitability or state that there is a rebuttable presumption that it is in the best interest of the child to be placed in the custody of his parents, they do, in fact, tacitly assume that the welfare of the child is best served by his living with his parents. (See Note, Alternatives to 'Parental Right' in Child Custody Disputes Involving Third Parties, 73 Yale L. J. 151, 154; Annotation, 31 A. L. R. 3d 1187, *supra*, at page 1191.) Moreover, both doctrines seek the same objective (albeit from two different approaches) and the result, under either doctrine is likely, in *most* cases, to be the same. See Johnstone, Child Custody, 1 Kan. L. Rev. 37, 42-44 (1952)."

hearing on the issue of converting temporary to permanent custody. From the record it is unclear when the emphasis shifted from an adjudicative to a dispositional perspective. Furthermore, it is also unclear as to what evidence was offered to prove dependency as opposed to that purportedly directed at ascertaining whether custody should be transformed to a permanent status. As indicated earlier, a consideration of the child's "best interests" should not enter into the initial step of adjudicating dependency.

Since the rationale upon which the Court of Appeals modified the original dispositional order was faulty, that decision must be reversed. In addition, although the entry of the trial judge held that the order recommended by the referee was in the best interests of Shannon, we are of the opinion that a new dispositional hearing is warranted. This is especially true in light of the amalgamation of the adjudicative and dispositional hearings on the record before us and the fact that we are not disturbing the finding of dependency.

Having established that the welfare and "best interests" of the child are the primary considerations in a dispositional hearing, and that parental unfitness is not a mandatory prerequisite to an award of permanent custody although it may enter into a consideration of "best interests," all parties will be able to proceed with the proper perspective in mind. Such a hearing should be conducted in accordance with the applicable Juvenile Rules and consistent with this opinion.

The judgment of the Court of Appeals is reversed, and the cause is remanded to the trial court for a new dispositional hearing in accord with this opinion.

*Judgment reversed and cause remanded.*

W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

HERBERT, J., concurs in the syllabus but would enter final judgment in favor of the judgment of the trial court.