OPINION
{¶ 1} Appellant, Sara Sorgen, the mother, appeals from the July 12, 2005 judgment entry of the Lake County Court of Common Pleas, Juvenile Division, adopting the magistrate's decision granting custody of Skyler H. Sorgen ("child") to appellees, Todd and Cindy Sorgen, the child's maternal grandparents.
 {¶ 2} The child was born on September 25, 2002. Appellant and the father, Zachary Shook ("father"), lived together when the child was born, but were not married. On December 16, 2002, the Fairport Harbor Police Department removed the child from his daycare and the juvenile court awarded emergency custody of the child to the Lake County Department of Jobs and Family Services ("LCDJFS").
 {¶ 3} On December 18, 2002, LCDJFS filed a complaint seeking temporary custody of the child, alleging the child was abused pursuant to R.C. 2151.031. The complaint alleged, inter alia, that the child had bruises on his forehead, a deep tissue bruise on his chin with an accompanying abrasion, a bruise on his left nipple, and two separate abrasions on his scalp. Further, the complaint noted concerns that the child had been spitting up blood.
 {¶ 4} The complaint also indicated that "[m]other first indicated she did not know how the scalp abrasions occurred and then said they were the result of a medical procedure in November. Mother indicated said child received the bruise to his forehead by hitting her head with his head. Mother reports that the bruise to said child's chin occurred when said child's head hit his father's mouth. Mother did not know where the nipple bruise came from but said it might have occurred from being held." In addition, the father could not explain the child's injuries.
 {¶ 5} On December 19, 2002, by agreement of the parties, the juvenile court ordered that temporary custody remain with LCDJFS and appointed a guardian ad litem ("GAL") for the child. The court further ordered that the child be placed with appellees and ordered that appellant and the father have supervised visitation, to be supervised by appellees.
 {¶ 6} At the adjudication hearing on March 3, 2003, LCDJFS amended the complaint to reflect a finding of neglect, and after appellant and the father agreed, the trial court found the child to be a neglected child pursuant to R.C. 2151.03(A)(6). The juvenile court continued temporary custody of the child to LCDJFS.
 {¶ 7} On July 8, 2003, appellees filed a motion with the juvenile court to be added as new party defendants, which the court granted. On July 25, 2003, appellees moved for temporary custody and legal custody of the child.
 {¶ 8} On August 12, 2003, by agreement of the parties, the juvenile court granted temporary custody of the child to appellees and protective supervision to LCDJFS.
 {¶ 9} On November 3, 2004, the magistrate ordered that legal custody be returned to appellant after determining that pursuant to In re Perales (1977), 52 Ohio St.2d 89, that he could not find appellant unsuitable since she had complied with her case plan. He further ordered LCDJFS to retain protective supervision of the child.
 {¶ 10} In addition, the magistrate ordered the father, although still living with the mother at the time of the hearing, to have only supervised contact with the child, finding that he remained a potential threat to him. The magistrate returned custody to appellant, even though he found that she continued to minimize the circumstances that led to the child being adjudicated a neglected child.
 {¶ 11} On December 20, 2004, by leave of court, appellees filed their objections to the magistrate's decision, claiming that because there had been a prior adjudication of neglect, the court should have based its decision on what was in the child's best interests and not whether the mother was unsuitable. On March 4, 2005, the judge sustained appellee's objections, determining that In re Perales did not apply since the child had previously been adjudicated a neglected child, and thus a finding of unsuitability was not required. The judge then referred the matter back to the magistrate to determine what would be in the child's best interests.
 {¶ 12} On March 11, 2005, the magistrate concluded that it would be in the child's best interest to remain in the custody of appellees. On March 24, 2005, appellant filed her objections to the magistrate's decision. On July 12, 2005, the court overruled the objections and adopted the magistrate's decision granting custody of the child to appellees. It is from that judgment appellant appeals, raising the following sole assignment of error:
 {¶ 13} "The trial court erred and abused its discretion by denying [appellant] her federal constitutional rights and fundamental liberty interest in the care, custody and management of her child as protected by the due process clause of theFourteenth Amendment of the United States Constitution and by Section 16, Article 1 of the Ohio Constitution."
 {¶ 14} In her assignment, appellant presents one issue for our review. She argues that before awarding custody to a nonparent, and after the child has been adjudicated an abused, neglected, or dependant child, and the parent has remedied the circumstances that led to the adjudication, a trial court must still find the parent to be unsuitable before awarding custody to a nonparent. For this proposition, the mother relies on In reC.R., 8th Dist. No. 82891, 2004-Ohio-4465. In the Eighth District decision, which we agree with appellant is "factually similar" to the instant appeal, the appellate court held that in a custody dispute between a parent and a nonparent, a court must first find that the parent is unsuitable before it can award custody to the nonparent.
 {¶ 15} We first note that "[a]bsent an abuse of discretion, an appellate court will not reverse a trial court's determination in a child custody matter." Walther v. Newsome, 11th Dist. No. 2002-P-0019, 2003-Ohio-4723, at ¶ 15, citing Davis v.Flickinger (1997), 77 Ohio St.3d 415, 416-417. "An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." Id., citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} Since the mother filed her timely notice of appeal, and after both briefs were filed, on March 29, 2006, the Supreme Court of Ohio released a decision that is dispositive of the case sub judice. The Supreme Court reversed the Eighth District's decision in In re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191, holding that "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." Id., at paragraph three of the syllabus.
 {¶ 17} In In re C.R., the Supreme Court first reviewed the history of child custody law which we will summarize. R.C.2151.23(A)(1) gives juvenile courts exclusive jurisdiction concerning children alleged to be abused, neglected, or dependent. Id. at ¶ 12. Furthermore, R.C. 2151.23(A)(2) grants jurisdiction to the juvenile court "`to determine the custody of any child not a ward of another court of this state.'" Id. However, "this statute does not articulate a standard for the juvenile court to apply when making such custody determinations." Id.
 {¶ 18} The Supreme Court noted that in In re Hockstok,98 Ohio St.3d 238, 2002-Ohio-7208, syllabus, it held that, "`(A) trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent.'" In re C.R., 108 Ohio St.3d at ¶ 18. However, it pointed out that Hockstok did not involve an abused, neglected, or dependent child, and instead, arose from a private custody dispute originating in the domestic relations court pursuant to R.C. 3109.04. Id.
 {¶ 19} The Supreme Court further explained that inHockstok, it had relied on In re Perales, supra, "which also did not involve an abused, neglected, or dependent child, but arose from a private custody dispute in juvenile court pursuant to R.C. 2151.23(A)(2)." In re C.R., 108 Ohio St.3d at ¶ 19. It stated that, "[i]n Perales, we held that in a child-custody proceeding between a parent and nonparent, a court may not award custody to the nonparent `without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.' [Perales] at syllabus." Id.
 {¶ 20} The Supreme Court continued by explaining that its decision in "In re Cunningham (1979), 59 Ohio St.2d 100, 106 * * * did involve a dependent child, and we stated that after a dependency adjudication, a finding of parental unfitness is not a mandatory prerequisite to an award of permanent custody. * * * Unlike In re Cunningham, the instant case does not involve an award of permanent custody and concerns a grant of only legal custody, which does not divest parents of residual parental rights, privileges, and responsibilities. However, as in In reCunningham, no statute requires a finding of parental unfitness as a prerequisite to an award of legal custody in cases where a child is adjudged abused, neglected, or dependent." In re C.R.,
108 Ohio St.3d at ¶ 20-21.[1]
 {¶ 21} After reviewing the history of child custody proceedings, the Supreme Court concluded that it agreed with "the appellate courts that have concluded that abuse, neglect, or dependency adjudications implicitly involve a determination of the unsuitability of the child's parents." Id. at ¶ 22.
 {¶ 22} Thus, based on the Supreme Court's holding in In reC.R., we conclude that the trial court did not err when it granted custody to appellees after determining that it would be in the child's best interests to remain with them.
 {¶ 23} The mother argues further that even if this court decides that the standard to be applied should be the "best interest" test, her case is factually distinguishable since the magistrate found that she had complied with her case plan and resolved the circumstances that led to the original neglect adjudication. We disagree.
 {¶ 24} Despite finding that the mother had complied with her case plan, the magistrate also found that "[t]he major factor preventing [mother] from re-obtaining custody has been her refusal to separate completely from [father], whose actions and mental health issues were the basis for the finding of neglect." Further, the magistrate noted that "[t]he risk that [father] poses to the child due to his mental health condition and [mother's] position that he poses little or no risk, has caused reluctance to return the child to the home. [Mother] minimizes to this date that which occurred as the basis of the neglect."
 {¶ 25} While we agree with the trial court that some issues remain unresolved, such as "how long the implication" of unsuitability should remain, and "whether there is any event that will reinstate the presumption in parents' favor[,]" we conclude that in the case sub judice, the implication of unsuitability still existed at the time of the custody hearing. The record before us reveals that at the time of the hearing, the Lake County Juvenile Court still had jurisdiction of the child, and had never relinquished that jurisdiction since it had originally adjudicated the child to be neglected.
 {¶ 26} Thus, we conclude that the trial court did not err or abuse its discretion when it applied the best interest standard in determining that custody of the child should remain with appellees.
 {¶ 27} We note that during oral argument, appellant argued that this court denied her motion to supplement the record with the guardian ad litem's report. However, appellant did not file a motion to supplement the record. On November 8, 2005, she filed a "Motion to Expend Funds from the State for the Expense of the Transcript of Trial held on August 11, 2004." Appellant moved to have this court pay for a copy of the transcript since she was indigent. She maintained that transcripts from that hearing, regarding closing arguments and the guardian ad litem's recommendation, were necessary for her reply brief.
 {¶ 28} On November 17, 2005, we denied appellant's motion because appellant did not submit to this court a Court Form OPD-206R Financial Disclosure/Affidavit of Indigency required by the Ohio Public Defender Commission's Standards and Guidelines for Appointed Counsel Reimbursement. Further, we noted that a reply brief was not permitted since the case was on the court's accelerated calendar, and even if it was not, such reply brief would have been due on October 6, 2005, more than a month prior to the filing of appellant's motion.
 {¶ 29} As such, appellant's assignment of error is without merit. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
Grendell, J., concurs,
O'Neill, J., dissents with Dissenting Opinion.
[1] The Supreme Court stated that in In re Cunningham, "we noted that, at that time, no statutory requirement necessitated a finding of parental unfitness as a prerequisite to an award of permanent custody in cases where a child is adjudged abused, neglected, or dependent." In re C.R., 108 Ohio St.3d at ¶ 20. It then noted that after In re Cunningham, "the General Assembly revised the statutory framework for a juvenile court in making permanent custody determinations. See R.C.2151.353(A)(4) and 2151.414(B) through (E)." In re C.R.,
108 Ohio St.3d at fn. 2.