OPINION
{¶ 1} Appellant, Shaun Ray, appeals from a Belmont County Common Pleas Court, Juvenile Division decision finding him to be an unsuitable parent and granting custody of his daughters to their maternal uncle, Jason Cattane.
 {¶ 2} Appellant was married to Barbara Garrett. Barbara already had one daughter, Samantha, from a previous relationship. Appellant and Barbara had two children together, Ashlei (d.o.b. 9/3/95) and Vanessa, (d.o.b. 3/12/97). Appellant and Barbara divorced, and Barbara was granted custody of the girls. Barbara then had another daughter, Valani. Next, Barbara married Jeremy Garrett. Jeremy is not the father of any of Barbara's children. Appellant now lives with his girlfriend, Nancy McCarthy, and her six children.
 {¶ 3} On February 7, 2006, appellee, the Belmont County Department of Job and Family Services, filed complaints alleging that Ashlei and Vanessa were dependent children. At the time, the girls were living with Barbara and their two half-sisters. The allegations in the complaint were as follows. On January 31, 2006, the Belmont County Sheriff's Department responded to a complaint of domestic violence at Barbara's home. When officers arrived they found Jeremy, who had escaped from the East Ohio Correctional Institution. The officers arrested Jeremy for domestic violence and his escape. Barbara was hospitalized for a skull fracture. The officers observed that the house was dirty and in disarray, and it appeared that all four girls slept on one dirty mattress on the floor. The officers also found Oxycodone and other medications. Interviews revealed that this was not the first time the girls had witnessed domestic violence in the home. The interviews also revealed that Barbara had been hiding Jeremy from law enforcement and that they planned to run away with the children to California.
 {¶ 4} The court held an emergency shelter hearing and granted temporary emergency custody to appellee. Appellant did not appear at this hearing. All four girls were placed in the home of Barbara's brother, Jason Cattane. Cattane lives with his girlfriend Amy Garrett. Amy is Jeremy's ex-wife. Amy has custody of her two children from her marriage to Jeremy. *Page 2 
 {¶ 5} At the next hearing, appellant appeared and the court granted him a continuance so that he could secure counsel. Appellant subsequently filed a motion for custody of his two girls and denied that they would be dependent if he were granted custody.
 {¶ 6} The court held another hearing. At this hearing, appellant stipulated to the charges in the complaint. The court adjudicated the girls dependent. It also granted temporary custody of the girls to appellee. The court then set a hearing date for appellant's motion for custody.
 {¶ 7} Before the hearing date arrived, Barbara committed suicide. Appellant then filed a motion for an emergency hearing, a supplemental motion for custody, and a motion to dismiss the case with appellee.
 {¶ 8} The girls' guardian ad litem (GAL) filed a report objecting to appellant's motion. The GAL's reasons for opposing appellant's motion were (1) the lack of visitation and meaningful relationship between appellant and the girls;[1] (2) the girls would have to be separated from their two half-sisters; and (3) appellant already had a large number of children residing in his home.
 {¶ 9} Next appellee filed a motion to terminate temporary custody and grant legal custody to the girls' uncle, Jason.
 {¶ 10} The court ordered appellant to undergo a psychological evaluation. Appellant did so and the subsequent report indicated that there was no reason he would be an unfit father.
 {¶ 11} The matter proceeded to a magistrate's hearing, which spanned several days over a three-month period. Additionally, the GAL filed several reports during this time. She reported that the girls had been visiting appellant, but that they wanted to continue to reside with their Uncle Jason and their two half-sisters. The *Page 3 
GAL agreed that this was in their best interests. She later reported that Ashlei had stopped visiting appellant.
 {¶ 12} The magistrate issued his decision on December 19, 2006. The magistrate stated that both appellee and the GAL stipulated and agreed that appellant is a fit and suitable parent. However, they both opined that it was in Ashlei's and Vanessa's best interests to remain in the same home with their two half-sisters. The magistrate found that "the worse [sic] that can be said about * * * [appellant's] home is reflected in the * * * GAL report where Ashlei claims `the visits are boring.'" The magistrate found that because the girls had been adjudicated dependent, there was an implied finding that appellant was unsuitable. However, he found that appellant was a suitable parent. Therefore, the magistrate reasoned that the implication of unsuitability was rebutted by the record. The magistrate went on to note that while several factors may have indicated that it was in the girls' best interest to remain with their Uncle Jason, none of those factors supported any harmful effect of awarding appellant custody of his children. Thus, the magistrate determined that appellant should be granted custody of Ashlei and Vanessa.
 {¶ 13} Both appellee and the GAL filed objections to the magistrate's decision. Before ruling on the objections, the court conducted an in-camera interview with both girls.
 {¶ 14} In identical judgment entries, the court found that it was in the girls' best interest to remain in their Uncle Jason's custody. Its most compelling reason for doing so was so Ashlei and Vanessa could remain in the same household with their half-sisters. The court determined that because the girls were adjudicated dependent, and appellant stipulated to that finding, this gave rise to a finding that appellant is an unsuitable parent. Therefore, the court determined that it was to look solely at what was in the girls' best interest in deciding custody. Hence, the court awarded custody to Jason and granted appellant visitation rights.
 {¶ 15} Appellant filed timely notices of appeal from both judgments.
 {¶ 16} Appellant raises a single assignment of error, which states: *Page 4 
 {¶ 17} "IN A DEPENDENCY ACTION, WHEN THE PARTIES STIPULATE TO THE SUITABILITY OF A PARENT, IT IS ERROR FOR THE COURT TO DETERMINE THAT SAID PARENT IS UNSUITABLE AND AWARD CUSTODY TO A NON-PARENT WHEN THE PARENT DID NOT FORFEIT ITS RIGHT BY CONTRACT, ABANDONMENT OR BY BECOMING TOTALLY UNABLE TO CARE FOR THE CHILD."
 {¶ 18} Appellant argues that the trial court erred in finding that he was unsuitable. Specifically, appellant takes issue with the trial court's finding that he stipulated to the girls' dependency. Instead, he states that he only stipulated to the allegations in the dependency complaint, which dealt with Barbara's conduct and never mentioned him. Additionally, he points out that the court's main justification for granting custody to Jason was to keep the girls in the same home with their half-sisters. Appellant argues that such a reason cannot be the basis for granting custody to a nonparent when the parent is suitable.
 {¶ 19} Furthermore, appellant asserts that the trial court misapplied the Ohio Supreme Court's holding in In re C.R., 108 Ohio St.3d 369,843 N.E.2d 1188, 2006-Ohio-1191. In that case, the Court held:
 {¶ 20} "2. A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents.
 {¶ 21} "3. When a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." Id. at paragraphs two and three of the syllabus.
 {¶ 22} Appellant argues that C.R. does not mandate a finding that a noncustodial parent is unsuitable when the children were adjudicated dependent while in the care and custody of the custodial parent.
 {¶ 23} Parents who are suitable have a paramount right to custody of their minor children. In re Perales (1977), 52 Ohio St.2d 89, 97,369 N.E.2d 1047. "In a *Page 5 
child custody case arising out of a parentage action between a natural parent of the child and a nonparent, a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent." In re Hockstok, 98 Ohio St.3d 238,781 N.E.2d 971, 2002-Ohio-7208, at the syllabus.
 {¶ 24} This case, however, did not arise out of a parentage action between a parent and a nonparent. Instead, it arose from a dependency action. Thus, we must determine whether a parental unsuitability determination was implied in this case, which would allow the court to grant custody to a nonparent if it is in the children's best interests, based on the Ohio Supreme Court's decision in C.R., supra.
 {¶ 25} In C.R., Susan Reust gave birth to C.R. Before the baby was a year old, the Department of Children and Family Services (DCFS) filed a complaint alleging that C.R. was a neglected child. At the time, C.R. was in Susan's care and custody. The complaint named C.R.'s father as "John Doe." After a probable-cause hearing, the juvenile court removed C.R. from Susan's care and placed her in the temporary custody of Clifford and Stephanie Reust, Susan's brother and sister-in-law. Jesse Crowder suspected that he might be C.R.'s father. He was the father of her two other children, who were in his mother's custody. Crowder began receiving notices of the neglect proceedings. He then filed a motion seeking legal custody of C.R. and a request for the court to order a paternity test. Paternity was subsequently established. Eight months later, the juvenile court adjudicated C.R. to be a neglected child. The matter then proceeded to a dispositional hearing where the court was faced with three competing motions for C.R.'s custody — one from Crowder, one from the Reusts, and one from C.R.'s grandmother. Without making a finding that Crowder was unsuitable, the juvenile court granted legal custody of C.R. to the Reusts. The magistrate made findings that custody to the Reusts was in C.R.'s best interest. Crowder appealed.
 {¶ 26} The Eighth District Court of Appeals reversed holding that the juvenile court should have made a finding that Crowder was unsuitable before awarding custody to a nonparent. The Eighth District, finding its decision to be in conflict with *Page 6 
that of other appellate districts, certified the following question to the Supreme Court: "In a case in which a juvenile court has adjudicated a child to be abused, neglected, or dependent, is the court also required to make a separate determination of parental unsuitability as to each parent at the dispositional hearing before awarding legal custody to a nonparent?" Id. at ¶ 8. The Supreme Court answered the question in the negative.
 {¶ 27} The Court initially pointed out that the case involved only a grant of legal custody, and not one of permanent custody. Id. at ¶ 13. In a grant of legal custody to a nonparent, the parent still retains residual parental rights, privileges, and responsibilities. Id. at ¶ 17.
 {¶ 28} The Court then went on to review its prior decisions dealing with similar issues. It noted that in Hockstok, 98 Ohio St.3d at the syllabus, it held that "`[A] trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent.'" Id. at ¶ 18. However, the Court noted that Hockstok did not involve an abused, neglected, or dependent child and arose from a private custody dispute originating in the domestic relations court pursuant to R.C. 3109.04. Id.
 {¶ 29} The Court further noted that in Perales, 52 Ohio St.2d at the syllabus, it held that "in a child-custody proceeding between a parent and nonparent, a court may not award custody to the nonparent `without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.'" Id. at ¶ 19. Once again, the Court noted that Perales did not involve an abused, neglected, or dependent child, but instead arose from a private custody dispute in juvenile court pursuant to R.C. 2151.23(A)(2). Id.
 {¶ 30} Finally, the Court pointed out that In re Cunningham (1979),59 Ohio St.2d 100, 391 N.E.2d 1034, did involve a dependent child. Id. at ¶ 20. In that case, *Page 7 
the Court held that after a dependency adjudication, a finding of parental unfitness was not a mandatory prerequisite to an award ofpermanent custody. Id., citing Cunningham, at 106. The Court noted that as was the case in Cunningham, no statute requires a finding of parental unfitness as a prerequisite to an award of legal custody when a child is adjudged abused, neglected, or dependent. Id. at ¶ 21.
 {¶ 31} Based on its review of its prior decisions, the Court concluded "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." Id. at ¶ 23. It further held that "when a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." Id. at ¶ 24.
 {¶ 32} This case shares several comparable facts with C.R. In the present case, like in C.R., the children were in the mother's custody when the dependency/neglect complaint was filed. And the dependency/neglect complaint did not make any allegations against the father. Additionally, in both cases the juvenile court granted legal custody, not permanent custody, to a nonparent.
 {¶ 33} But while this case is similar to C.R., there are a few significant factual differences. Appellant appeared at the dependency hearing without counsel; although he was represented by counsel. Prior to the hearing, appellant's counsel filed a "denial" to the dependency complaint. In this filing, appellant asserted that Barbara's conduct was such that the girls would be dependent, however they were not dependent because "their natural father has every ability to take care of [them]." At the hearing, the court went over the allegations of the complaint with appellant. The court noted that nobody had made any allegations against him regarding the care of his children. (Apr. 28, 2006 Tr. 23, 24). Appellant then stipulated to the allegations in the dependency complaint. (Apr. 28, 2006 Tr. 25). *Page 8 
 {¶ 34} The other difference, and the more significant one, between this case and C.R., supra, is that at the hearing on the custody motions in this case, both the GAL and appellee stipulated that appellant was a fit parent. (Nov. 29, 2006 Tr. 3-4). In fact, appellee's counsel specifically stated, "I have no problem stipulating to the fact that Shaun Ray is a fit parent. That is not the issues is [sic.]. I've tried to make that clear every time we've been here." (Nov. 29, 2006 Tr. 3). These stipulations came after the court had already adjudicated the girls dependent.
 {¶ 35} So given these facts and law, we are faced with the following. The children were adjudicated dependent. No allegations in the dependency complaint were made against the father, who was the noncustodial parent. The father stipulated to the allegations in the dependency complaint. Because the juvenile court found the children to be dependent an implication arose, per C.R., supra, that the father was an unsuitable parent. After the adjudication, both the Department of Job and Family Services and the children's GAL stipulated on the record that the father is a fit parent. Thus, the question this court must answer is: After an adjudication of dependency gives rise to an implication that the noncustodial parent is unsuitable, whether that implication of unsuitability is rebutted and overcome when the Department of Job and Family Services and the GAL later stipulate that the parent is indeed fit. The magistrate found that the implication of unsuitability was rebutted. The trial court found the opposite.
 {¶ 36} Although not exactly on point, two cases from our sister districts are helpful.
 {¶ 37} In In re Sorgen, 11th Dist. No. 2005-L-121, 2006-Ohio-4180, the child, who was residing with both of his parents, was adjudicated neglected. Both parents agreed to this finding. The court granted temporary custody to the child's grandparents. More than a year later, a magistrate determined that custody should be returned to the mother. The magistrate reasoned that he could not find the mother unsuitable because she had complied with her case plan. The grandparents filed objections to the decision arguing that because the child had been adjudicated *Page 9 
neglected, the magistrate should have based his decision on what was in the child's best interests and not whether the mother was unsuitable. The trial court agreed with the grandparents and ordered the magistrate to apply the best interest test instead. This time, the magistrate found that it was in the child's best interest that the grandparents retain custody. The court approved this decision and the mother appealed.
 {¶ 38} On appeal, the mother argued that before a court can award custody to a nonparent after the child has been adjudicated an abused, neglected, or dependent child and after the parent has remedied the circumstances that led to the adjudication, the court must find the parent to be unsuitable. Relying on the holding in C.R., supra, the appellate court determined that the trial court did not err when it granted custody to the grandparents after determining that it would be in the child's best interests to remain with them. Id. at ¶ 22. Thus, it determined that an unsuitability determination was not required before granting custody to a nonparent after the parent remedied the conditions that led to the neglect finding.
 {¶ 39} Interestingly, while not directly at issue in Sorgen, the court noted:
 {¶ 40} "While we agree with the trial court that some issues remain unresolved, such as `how long the implication' of unsuitability should remain, and `whether there is any event that will reinstate the presumption in parents' favor[,]' we conclude that in the case sub judice, the implication of unsuitability still existed at the time of the custody hearing. The record before us reveals that at the time of the hearing, the Lake County Juvenile Court still had jurisdiction of the child, and had never relinquished that jurisdiction since it had originally adjudicated the child to be neglected." Id. at ¶ 25.
 {¶ 41} These statements by the court indicate that the implication of unsuitability can end in some way. Yet how a parent can eradicate this implied finding is unclear. The court does suggest, however, that the implication of unsuitability exists at least as long as the juvenile court has continuous jurisdiction over the child stemming from the original neglect adjudication. In the case at bar, the *Page 10 
trial court has had continuous jurisdiction over the children since their dependency adjudication.
 {¶ 42} The other case that is helpful is In re Russell, 5th Dist. No. 06-CA-12, 2006-Ohio-6666. In Russell, a complaint was filed alleging that the two children were dependent because the mother, who was the custodial parent, was in jail and the father, who was the noncustodial parent, was about to be evicted from his home and was behind in paying bills. The trial court found that the parents admitted to a finding of dependency because the mother agreed to it and the father failed to show up for court. Based on this finding, the court granted temporary custody of the children to their aunt and uncle. Several months later, the father filed a motion for custody and alleged that he never received adequate notice of the dependency hearing. The County Children Services Board subsequently filed a motion to give legal custody to the aunt and uncle. The trial court found the parents to be unsuitable and awarded legal custody to the aunt and uncle. The father appealed.
 {¶ 43} On appeal, the father argued that it was error for the trial court to rely on the dependency finding because he did not receive adequate notice of the dependency hearing. The appellate court found that the father did receive adequate notice and, in fact, attempted to attend the hearing but did not make it in time. Id. at ¶ 19-21. Additionally, the court relied on C.R., supra, noting that a finding of unsuitability as to the noncustodial parent is not necessary when making an award of legal custody to a nonparent. Id. at ¶ 22. The court also found significant the fact that the father did not appeal the dependency finding. Id. at ¶ 25. Therefore, the court concluded that the father could not attempt to collaterally attack the dependency finding by arguing that it was error for the trial court to rely on the dependency finding. Id.
 {¶ 44} Likewise in this case, appellant did not appeal from the dependency finding. Had appellant believed that his children were not dependent, he should have filed an appeal from that judgment. Instead, like the father in Russell, appellant is now launching a collateral attack on the dependency finding. *Page 11 
 {¶ 45} An argument exists in this case that because both appellee and the GAL stipulated that appellant is fit, the implication of unsuitability was rebutted and the trial court should have been required to make an independent finding that appellant was unsuitable before granting custody of the children to Jason. However, the Supreme Court's holding is unmistakably clear: When a juvenile court adjudicates a child to be dependent, "it has no duty to make a separate finding at thedispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." (Emphasis added.) C.R., 108 Ohio St.3d at paragraph three of the syllabus. The Court's holding does not leave any room for stipulations of "fitness." In this case, we have no choice but to apply the Court's holding as stated.
 {¶ 46} And both Sorgen, supra, and Russell, supra, support this outcome. Although those cases have somewhat different fact patterns, in both cases, the courts ultimately relied on the Supreme Court's holding in C.R. and applied it as stated. They did so even though in one case the parent remedied the conditions that caused the neglect finding and thus, the unsuitability implication, and in the other case the parent missed the dependency hearing and never agreed to the dependency finding.
 {¶ 47} Additionally, it is important to stress that the trial court granted legal custody to Jason, as opposed to permanent custody. Permanent custody divests parents of all parental rights. But because the trial court granted only legal custody, appellant is still left with residual parental rights such as the right to visitation and the right to determine the children's religion. In re Nice (2001),141 Ohio App.3d 445, 455, 751 N.E.2d 552. Additionally, appellant can file a motion for a change of custody in the future. In re S.N., 9th Dist. No. 23571,2007-Ohio-2196, at ¶ 24.
 {¶ 48} Since the trial court was not required to make a finding that appellant was unsuitable before granting legal custody of the children to their uncle, the court did not err in making such a disposition of custody after determining that it was in the children's best interest. Accordingly, appellant's sole assignment of error is without merit. *Page 12 
 {¶ 49} For the reasons stated above, the trial court's judgment is hereby affirmed.
Waite, J., concurs.
DeGenaro, P.J., concurs.
[1] The record includes several reports by the girls' GAL that indicate that although appellant was granted liberal visitation in the divorce decree between him and Barbara, he failed to exercise this visitation and contact between appellant and the girls had been infrequent. *Page 1