[Cite as *In re J.B.*, 2018-Ohio-1033.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

J.B., K.B.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Craig R. Baldwin, J.

Case Nos. 2017CA00177,
2017CA00178

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case Nos. 2016 JCV 00618, 2016 JCV 00619 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 19, 2017 |
| APPEARANCES: | |

For Appellant- Father

KATHALEEN O'BRIEN
1967 E. Maple Street
North Canton, Ohio 44720

For Appellee - SCDJFS

BRANDON J. WALTENBAUGH
Stark County Dep't. of Job/Family Services
402 2nd Street SE
Canton, Ohio 44702

*Hoffman, J.*

{¶1} In Stark App. No. 2017CA00177, Appellant Rory Bowers ("Father") appeals the August 28, 2017 Judgment Entry and Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights, privileges, and responsibilities with respect to his minor child ("Child 1"), and granted custody of the child to Appellee Stark County Department of Job and Family Services ("SCDJFS"). In Stark App. No. 2017CA00178, Father appeals a second August 28, 2017 Judgment Entry and Findings of Fact and Conclusions of Law also entered by the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights, privileges, and responsibilities to his other minor child ("Child 2"), and granted permanent custody of the child to SCDJS.

STATEMENT OF THE CASE AND FACTS

{¶2} Melodi Bowers ("Mother") and Father are the biological parents of Child 1 and Child 2. On August 1, 2016, SCDJFS filed complaints, alleging Child 1 and Child 2 were dependent, neglected, and/or abused children. The allegations in the complaints centered on Mother's severe drug use, her lack of parenting skills, the family's lack of appropriate housing, and the children's poor hygiene. The trial court conducted a shelter care hearing on the same day. After Mother and Father stipulated to a finding of probable cause, the trial court found probable cause and placed the children in the emergency temporary custody of SCDJFS. The trial court appointed Attorney Mary Lou Sekula as attorney and guardian ad litem for the children.

{¶3}   At an adjudicatory hearing on September 30, 2016, the trial court found the children to be neglected and placed them in the temporary custody of SCDJFS.  The trial court approved and adopted the case plan.

{¶4}   The trial court conducted a review hearing on January 27, 2017, and found Father was still using illicit drugs, had recently been evicted, and was not progressing on his case plan.  The trial court again approved and adopted the case plan, and maintained the status quo.

{¶5}   At a review hearing on May 30, 2017, the trial court found the children had recently disclosed Father had perpetrated persistent sexual abuse upon them in the past.  The trial court also found there was evidence to believe Mother knew about the abuse and did nothing to prevent it from occurring or to protect the children.  Further, Mother and Father had fled to Florida.  The trial court issued a No Contact Order, which also included the children's paternal grandparents.

{¶6}   On June 16, 2017, SCDJFS filed motions for permanent custody, alleging the children could not and should not be placed with Father within a reasonable amount of time; Father had committed abuse against the children and the seriousness of the abuse rendered placement of the children with Father a threat to their safety; Father had abandoned the children; and it was in the children's best interest to grant permanent custody to the Agency.  Attorney Sekula submitted her Guardian ad Litem Report on June 23, 2017, recommending the children be placed in the permanent custody of SCDJFS. The trial court conducted a review hearing on June 27, 2017, and found Father was not making progress on his case plan.  Specifically, Father had not successfully completed substance abuse treatment, had tested positive for illegal substances during the

pendency of the proceedings, had not make any progress in Goodwill classes, and had fled to Florida after he was interviewed by police regarding the children's disclosures of sexual abuse.

**{¶7}** The trial court conducted a hearing on the motions for permanent custody on August 10, 2017. Father did not attend the hearing. Counsel for Father stated he had spoken with Father the day before the hearing and Father indicated he would be unavailable to attend the hearing.

**{¶8}** Vickie Mitchell, the ongoing case worker, testified SCDJFS became involved with the family after police responded to the home and found Mother on the front lawn, "drooling and incoherent" and under the influence of drugs. Police administered Narcan and Mother was transported to the hospital. Father was not present and could not be reached. The children, who were in filthy clothing, were unsupervised. The home was in deplorable condition with animal waste covering the floor and rotting food left out. In addition, there were no working utilities and the home was infested with bugs.

**{¶9}** Father's case plan required him to complete a psychiatric evaluation at Northeast Ohio Behavior Health and follow all recommendations; engage in individual counseling to address anger management and coping skills; participate in Goodwill after he demonstrated an ability to abstain from all mood altering substances; participate with Quest Recovery Services; attend at least two 12 step meetings a week; find a sponsor; secure and maintain gainful employment; and secure appropriate housing.

**{¶10}** Father was inconsistent with individual counseling. Although he started Goodwill classes, Father was terminated prior to completion due to violations of his behavior contract which required him to be attentive in class and to submit to random

urine screens. Father fell asleep during classes and missed a drug screen. Father had not submitted a urine screen since April, 2017. He did not find a sponsor or attend 12 step meetings. Father's services stopped after he and Mother relocated to Florida in April, 2017.

{¶11} SCDJF's initial concerns centered upon Mother and Father's substance abuse and the unsanitary conditions in the home. However, in April, 2017, the children disclosed they had been sexually abused by Father. SCDJFS was especially alarmed as the Agency had learned Father was the alleged perpetrator of sexual abuse involving a young girl in a 2012 Summit County Department of Job and Family Service's case. Child 2 underwent a forensic evaluation. Child 1 was interviewed and provided specific details of Father rubbing the children's vaginal areas, taking nude photographs of the children, and forcing them to perform oral sex on him. Father told the children it was a secret. After the police interviewed Father, Mother and Father left Ohio, and moved into the paternal grandmother's home in Florida.

{¶12} Prior to the allegations coming to light, Mother and Father visited the children together on a weekly basis. Visitation was moved from the Agency to Goodwill. After the visits began at Goodwill, the children's behavior regressed. Child 1 began to complain of stomach aches, used baby talk, and defecated in her pants. Father interacted with the children, however, the interactions Father did have were minimal and inappropriate. Father would tickle the children, touch their faces, and brush back their hair from behind their ears. Father did not bring food or snacks for the children to the visits. Father last visited the children in April, 2017.

{¶13} Carrie Schnirring, a psychology assistant at Northeast Ohio Behavioral Health, conducted a sexual abuse evaluation of Child 2. Child 2 stated the abuse occurred in the living room after Father closed the curtain. Child 2 felt sad, scared, and disgusted, and did not want to talk about the abuse. Child 2 was able to express what happened using an anatomically correct diagram, stating Father rubbed her vagina over her clothing with his hands. Child 2 told Schnirring about "starving". Child 2 spoke of her fear parents were dead as they could not be awakened. Father gave the children "bad whoopings" with his hand or a belt. Father gave the children little white pills to help them sleep. Schnirring diagnosed Child 2 with Adjustment Disorder with Mixed Anxiety and Depressed Mood. Child 2 is currently involved in trauma therapy.

{¶14} Dr. Aimee Thomas, a licensed psychologist and professional clinical counselor with Northeast Ohio Behavioral Health, completed parenting evaluations of Father. Dr. Thomas diagnosed Father with Bipolar Disorder, Cocaine Abuse Disorder, Alcohol Abuse Disorder, Rule out Opiate Abuse Disorder and codependency. Dr. Thomas recommended Father abstain from all mood altering substances and undergo comprehensive mental health treatment services which would entail prescribed medication and talk therapy. Dr. Thomas noted, "If [Father's] symptoms of Bipolar disorder are not adequately addressed, he will be at high risk for relapse on drugs and alcohol when experiencing depressive symptoms of mania."

{¶15} During the best interest portion of the hearing, the evidence revealed the children are Caucasian. They have no health or behavioral issues. Child 1 was slightly delayed educationally in math and reading, but is now doing well and is on track in school. Both children had significant tooth decay when they came into custody, but such has been

remedied. Both children see a counselor at least once each week. Initially, Child 1 was very anxious about basic necessities such as food, utilities, and a clean shelter. Now that the children are in a stable foster home, Child 1 feels safe. The children are placed in the same foster home. Although the foster parents are not interested in adopting the children, they are willing to care for the children until an adoptive home is found. Another couple has expressed an interest in adopting the children.

**{¶16}** SCDJFS explored relative placement. Mother had no relatives who were capable of caring for the children. Paternal grandmother initially expressed an interest in placement, but refused to establish a relationship with the children. Paternal grandmother was more concerned about when the children would be returned to Father. The children love their parents and miss them. They are worried about Mother. However, the children have clearly expressed a desire not to go back to their parents' home.

**{¶17}** Via separate Judgment Entries and Findings of Fact and Conclusions of Law filed August 28, 2017, the trial court terminated Father's parental rights, privileges, and responsibilities with respect to Child 1 and Child 2, and granted permanent custody of the children to SCDJFS. The trial court found the children could not and should not be placed with Father, and it was in the children's best interest to grant permanent custody to SCDJFS.

**{¶18}** It is from these judgment entries Father appeals.

**{¶19}** In Stark App. No. 2017CA00177 and Stark App. No. 2017CA00178, Father raises identical assignments of error:

I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶20}**  These cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

Stark App. No. 2017CA00177

I, II

Stark App. No. 2017CA00178

I, II

**{¶21}**  We elect to address all of Father's assignments of error in both appeals together.

**{¶22}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

**{¶23}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶24}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶25}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶26}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶27}** In its August 28, 2017 Judgment Entries, the trial court found not only that the children could not or should not be placed with either parent, but also that the children had been abandoned.

**{¶28}** Father's Brief only addresses the finding the children could not or should not be placed with either parent. We find the evidence presented at the permanent custody hearing supports the trial court's finding.

**{¶29}** Father failed to make significant progress on his case plan. Father's case plan required he complete a parenting evaluation; undergo drug and alcohol treatment, comprehensive mental health treatment, and anger management; attend parenting classes; maintain sobriety; engage in intensive outpatient treatment aftercare, relapse prevention, and 12 step meetings; and obtain and maintain stable housing and

employment.  Father completed a parenting evaluation.  Father underwent a mental health evaluation and was diagnosed with bipolar disorder, cocaine abuse disorder, alcohol abuse disorder, and rule out opiate abuse disorder.  Father did not complete substance abuse treatment or comprehensive mental health treatment.  Father was terminated from parenting classes at Goodwill as he violated his behavior contract. Father had not submitted a urine screen since April, 2017. He did not find a sponsor or attend 12 step meetings.  Father did not obtain appropriate housing or stable employment. Father's services stopped after he and Mother relocated to Florida in April, 2017.

**{¶30}** Based upon the foregoing, we find the trial court did not err in finding the children cannot and should not be placed with Father within a reasonable time.  However, even if we found the trial court erred in finding the children could not or should not be placed with Father at this time or in the foreseeable future, such error would not require reversal of the permanent custody determination under the two-issue rule. The trial court had an alternate, independent ground for terminating parental rights, i.e., the children had been abandoned.

**{¶31}** We now address the best interest portion of Father's argument.

**{¶32}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need

for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶33} The best interest of the child is the primary consideration in permanent custody cases. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶34} Father contends the trial court erred in finding it was in the best interest of the children to grant permanent custody to SCDJFS.

{¶35} As set forth in our Statement of the Case and Facts, supra, the children are Caucasian, and they have no health or behavioral issues. Child 1 was slightly delayed educationally in math and reading, but is currently doing well and on track in school. Both children see a counselor at least once each week. Initially, Child 1 was very anxious about basic necessities, but feels safe as a result of the stability of the foster home. The children are placed in the same foster home. Although the foster home is not interested in adopting the children, they are willing to care for the children until an adoptive home is found. Another couple recently met the children and expressed an interest in adopting them.

{¶36} SCDJFS explored relative placement. Mother had no relatives who were capable of caring for the children. Paternal grandmother initially expressed an interest in placement, but refused to establish a relationship with the children. She did not believe the children's disclosures about Father's sexual abuse of them. Paternal grandmother intended to return the children to Father if she was given custody.

{¶37} The children have clearly expressed a desire not to go back to their parents' home. They did not believe Mother would keep them safe from Father or be able to provide for their basic needs.

**{¶38}** We find the trial court's finding it was in the children's best interest to grant permanent custody to SCDJFS was supported by clear and convincing evidence.

**{¶39}** Father's first and second assignments of error are overruled.

**{¶40}** The judgments of the Stark County Court of Common Pleas, Family Court Division, are affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur