[Cite as *In re J.S.*, 2015-Ohio-3111.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| | | JUDGES: |
| IN THE MATTER OF: J.S., JR. | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| | : | |
| | : | |
| | : | Case No. 2015CA00083 |
| | : | |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil appeal from the Stark County Court of Common Pleas, Juvenile Divsion,  Case No.2014JCV00034


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    August 3, 2015


APPEARANCES:

For Appellee

JAMES B. PHILLIPS
SCDJFS
221 Third Street S.E.
Canton, OH 44702

For - Appellant

ANTHONY J. WISE
Stark County Public Defender
201 Cleveland Avenue S.W.
Suite 104
Canton, OH 44702

*Gwin, P.J.*

{¶1}   Appellant J.S., Sr., ("Father") appeals the judgment of the Stark County Court of Common Pleas, Juvenile Division, overruling his motion to continue the permanent custody trial and granting permanent custody to the Stark County Department of Job and Family Services ("SCDJFS").

*Facts & Procedural History*

{¶2}   Appellant J.S., Sr. is the father of minor J.S., Jr., born on July 11, 2013. On January 15, 2014, SCDJFS filed a complaint alleging that J.S., Jr., was a dependent and neglected child and seeking temporary custody.  The complaint indicated there were concerns about the mental stability of both parents and that the child's treating physician had concerns about the weight and regression in development of the child. Further, that the parents had not followed through with physical therapy for the child's torticullis condition.

{¶3}   At a shelter care hearing on January 16, 2014, Father stipulated to probable cause.  On April 3, 2014, the trial court held an evidentiary adjudication hearing.  At the hearing, SCDJFS deleted the allegations of neglect.  The trial court found J.S., Jr., to be a dependent child, incorporated SCDJFS' proposed case plan, and granted temporary custody to SCDJFS.  Father filed a motion to extend temporary custody on July 11, 2014, which he subsequently withdrew on August 28, 2014.

{¶4}   On December 16, 2014, SCDJFS filed a motion for permanent custody of J.S., Jr.  The motion stated that neither parent was compliant with mental health services.  Further, that Father had not completed a parenting evaluation, had received a certificate of non-compliance from Goodwill Parenting, had not complied with drug

treatment or random drugs tests, and had not visited J.S., Jr., since June of 2014. Father was personally served with a copy of the motion for permanent custody on January 16, 2015. On April 3, 2015, J.S. Jr's guardian ad litem filed a report recommending permanent custody be granted to SCDJFS.

{¶5} A trial on SCDJFS' motion for permanent custody was held on April 7, 2015. At the beginning of the hearing, the trial court indicated that Father appeared at the courthouse 12:30 p.m., prior to the start of the 1:00 p.m. trial, spoke with his attorney, was told to have a seat in the lobby, but had not returned as of 1:33 p.m. Father's attorney stated that Father expressed an interest in speaking with the guardian ad litem. Further, that Father's attorney told Father he had approximately fifteen (15) minutes before the trial began, so Father should sit in the lobby and wait for the guardian ad litem to arrive. Father's guardian ad litem, also an attorney, stated that she saw Father around 11:00 a.m., spoke with him about the hearing, and reminded him that the trial began at 1:00 p.m. Father indicated to her that he understood and would be there. She attempted to call Father's phone, but it was disconnected. Father's attorney and his guardian ad litem indicated to the trial court that Father could not be located in or around the courtroom. Father's attorney then requested a continuance of the permanent custody trial, which the trial court denied. The trial court also noted that Father had an active warrant for his arrest.

{¶6} Sue Snyder, an ongoing caseworker for SCDJFS testified that J.S., Jr., has been in the temporary custody of the agency since January 15, 2014. Further, that the case plan contained services for Father because of concerns with his mental health, lack of stability, parenting skills, lack of stable housing, and lack of visitation with the

child.  Snyder testified that Father did not complete a parenting assessment, received a certificate of non-compliance from Goodwill Parenting, did not complete anger management treatment, has no stable residence, and did not visit J.S., Jr., from January of 2014 to January of 2015.  Father has had three (3) visits with the child since January of 2015.  Snyder testified that Father did nothing to reduce the risk posed to the child and that he cannot safely care for J.S., Jr.  Snyder finally stated it is in the child's best interest to grant permanent custody to SCDJFS.  Father's attorney cross-examined Snyder and made closing arguments to the trial court.

{¶7}    On April 8, 2015, the trial court issued findings of fact, conclusions of law, and a judgment entry, which journalized the denial of Father's motion to continue.  The trial court found, by clear and convincing evidence, that Father abandoned J.S., Jr., by failing to visit him for more than ninety (90) days; that the child has been in the temporary custody of SCDJFS for twelve out of the last twenty-two months; that reasonable efforts were made by SCDJFS; and that the child cannot be placed with Father within a reasonable period of time.  The trial court finally found it was in the best interest of J.S., Jr., to grant permanent custody to SCDJFS.

{¶8}    Father appeals the judgment entry of the trial court, assigning the following as error:

{¶9}    "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO CONTINUE THE PERMANENT CUSTODY TRIAL."

I.

{¶10} A parent has a fundamental liberty interest in the care, custody, and management of his or her child and an essential and basic civil right to raise his or her children. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). However, a parent's right is not absolute as "the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 391 N.E.2d 1034 (1979).

{¶11} The decision to grant or deny a motion for continuance rests within the sound discretion of the trial court. *In re R.H.*, 5th Dist. Stark No. 2012-CA-00008, 2012-Ohio-1811; *State v. Unger*, 113 Ohio App.3d 137, 680 N.E.2d 665 (3rd Dist. 1996). This court may not reverse a trial court's decision unless we find it has abused its discretion. *Id.* The Supreme Court has defined the term abuse of discretion as demonstrating the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶12} A party has a right to a reasonable opportunity to be present at trial and a right to a continuance for that purpose. *Hartt v. Munobe*, 67 Ohio St.3d 9, 615 N.E.2d 617 (1993). A party does not, however, have a right to delay trial for no reason. *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 45 N.E.2d 763 (1942). A continuance based on a party's absence must be based on unavoidable, not voluntary, absence. *Id.; In re Gibby*, 5th Dist. Fairfield No. 2003-CA093, 2004-Ohio-2708.

{¶13} Among the factors to be considered and balanced in determining whether the continuance was properly denied are: (1) the length of the requested delay; (2) whether other continuances had been requested and granted; (3) the convenience or

inconvenience to the parties, witnesses, counsel, and court; (4) whether the delay was for legitimate reasons or whether it was "dilatory, purposeful, or contrived."; (5) whether the defendant contributed to the circumstances giving rise to the request; (6) whether denying the continuance will result in an identifiable prejudice to the defendant's case; and (7) the complexity of the case. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981).

{¶14} In this case, Father's attorney did not indicate the length of the requested delay. Father had not previously requested a continuance. However, when counsel for Father requested the continuance at the start of the permanent custody trial, Father's counsel could not explain why Father was absent, as Father was present outside the courtroom approximately fifteen (15) minutes before the trial began, and Father's counsel told him to have a seat and wait to speak with the guardian ad litem. The trial court waited more than thirty (30) minutes to start Father's portion of the permanent custody trial and allowed Father's counsel the opportunity to locate him before going forward with the trial. Further, Father's guardian ad litem spoke with Father that morning about the hearing and Father indicated to her he understood when the hearing was and that he would be there.

{¶15} Generally, a trial court does not abuse its discretion in denying a motion for continuance when a party fails to appear at trial without explanation and when there is no indication that the party would attend a later trial if the continuance was granted. *Heard v. Sharp*, 50 Ohio App.3d 34, 552 N.E.2d 665 (8th Dist. 1988). Here, there was no explanation for Father's absence or any indication that he was unavoidably absent. Without any explanation about Father's absence, the trial court was justified in

assuming his absence was voluntary. *In the Matter of Gibby*, 5th Dist. Fairfield No. 2003-CA-93, 2004-Ohio-2708.

{¶16} We find the trial court did not abuse its discretion in overruling Father's motion to continue the permanent custody trial. Father had notice of the hearing, as he was personally served with the motion. Father was represented by counsel at the trial and counsel for Father cross-examined the agency's witness and made a closing statement on Father's behalf. Father appeared prior to the trial, but did not remain for the start of the trial. In the absence of evidence appellant was unavoidably absent, this court cannot find the trial court abused its discretion.

{¶17} Father's assignment of error is overruled. The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur