[Cite as *In re A.S.*, 2022-Ohio-2670.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.S., ET AL.                            :

                                              :           Nos. 110937 and 110989

Minor Children                                :

[Appeal by Mother and Father]                 :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  August 4, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-17913395 and AD-17913396

---

### *Appearances:*

Patrick S. Lavelle, *for appellant* A.S.

Edward F. Borkowski, Jr., *for appellant* G.S.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1}   In this consolidated appeal, A.S. ("Mother") and G.S. ("Father"), individually appeal from the juvenile court's judgment entry reinstating its original decision granting permanent custody of Ar.S. and G.S. ("the minor children") to the

Cuyahoga County Division of Children and Family Services ("CCDCFS"). For the reasons that follow, we affirm.

## I.     Background and Prior Appeal

{¶ 2}     In June 2021, this court reversed the juvenile court's decision granting permanent custody of the minor children to CCDCFS. *See In re Ar.S.*, 2021-Ohio-1958, 174 N.E.3d 28 (8th Dist.).[1] This court's majority found that the minor children could not be placed with either parent but determined that the juvenile court abused its discretion in finding that it was in the children's best interest to grant permanent custody to CCDCFS. *Id.* at ¶ 33, 63. The majority determined that the juvenile court should have granted legal custody to the minor children's aunt, S.S. This court's majority instructed the juvenile court "to give the [sic] S.S. another opportunity to complete the Statement of Understanding, required by R.C. 2151.353(A)(3), and the Rehabilitation Standard Form, so that legal custody to [S.S.] can be effectuated." *Id.* at ¶ 64. This court subsequently issued a clarification order stating in relevant part:

> This Court's mandate, journalized June 10, 2021, required that upon S.S. completing the Statement of Understanding and the Rehabilitation Form, the juvenile court is to award legal custody of the minor children to S.S. without delay. No further proceedings to determine what is in the best interest of the children need to be conducted. The clear import of this Court's decision is that it is in the best interest of the minor children that legal custody be awarded to S.S.

*In re Ar.S.*, 8th Dist. Cuyahoga No. 110028, Motion No. 548269 (Aug. 3, 2021).

---

[1] A complete history of the case and factual background can be found in the prior appeal.

## II.  The Remand

{¶ 3}  On October 6, 2021, the juvenile court scheduled an in-person hearing to address this court's directive and to facilitate S.S. signing the appropriate documentation to comply with this court's remand order.  The juvenile court issued notices to all interested parties, including S.S.

{¶ 4}  At the October hearing, all parties appeared except Mother, who had chosen not to appear, and S.S., who was absent without explanation.[2]  At the hearing, Mother's trial counsel and the minor children's guardian ad litem ("GAL") advised the court that they each contacted S.S. to remind her of the hearing.  According to Mother's counsel, S.S. said that she would be at the court hearing.

{¶ 5}  During the hearing, counsel for CCDCFS advised the court that S.S. told multiple individuals at the agency that she was not going to cooperate with CCDCFS and even threatened to call the Sheriff's Department after being contacted.  According to counsel, S.S. "indicated that she was not going to sign a Statement of Understanding until her attorney looked at it." (Tr. 6-7.)  Counsel stated that S.S. never provided the name of an attorney, no attorney ever contacted CCDCFS on her behalf, and no attorney ever made an appearance on her behalf in the juvenile court. (Tr. 9-10.)  Additionally, counsel said that S.S. advised the agency that "she was not going to allow [them] to go out to her house.  She was not going to participate in filling out the rehabilitation form.  She was not going to participate with the Agency doing fingerprints." (Tr. 7.)  Counsel for CCDCFS explained to the court that the

---

[2] Counsel for Mother appeared.

documentation is required pursuant to the Ohio Administrative Code's guidelines that the Agency needs to follow when placing a child in the legal custody of another. (Tr. 7.) Counsel reported that when CCDCFS supervisor Matt Miller asked if S.S. wanted legal custody in an effort to identify the barriers to completing this process, "she didn't even verify for the Agency that she wanted legal custody." (Tr. 7.) Based on S.S.'s unwillingness to comply with the requirements to obtain legal custody of the minor children, CCDCFS requested that the prior order of permanent custody to the agency be reinstated.

{¶ 6} Counsel for Mother described to the court her interactions with S.S. Counsel stated that she spoke with S.S. by phone for over an hour on August 11, 2021, during which time they reviewed the Statement of Understanding form, which was subsequently mailed to S.S. (Tr. 10-11.) Mother's attorney noted that she had thereafter attempted to contact S.S. for weeks, but that the next time S.S. had answered her phone calls was just the Monday prior to the hearing. (Tr. 11). Counsel stated that during the conversation, S.S. told her that she had received the Statement of Understanding, but that "she is not going to sign it until she addresses her concerns in Court today, and she informed me she would see me in Court." (Tr. 11.) Counsel advised the court that "[i]t is still my client, [M]other's position to have custody go to [S.S.]; however, I've explained to my client the obstacles that we are facing at this time." (Tr. 11.)

{¶ 7} Counsel for the children noted that based on what he was hearing, S.S. was displaying

consistent behavior with my experience during this case prior to our permanent custody hearing. This was an individual who repeatedly was combative, failed to follow through and did not follow the procedures outlined by the law and by the Agency to try to facilitate legal custody. So I'm at a loss given the Eighth District's opinion that somebody would blow off all of these efforts once again.

(Tr. 12.)

{¶ 8} The GAL advised the juvenile court that he also contacted S.S. by sending her the appellate opinion and "implored her to cooperate with the [agency] and to execute the documents that need to be executed." (Tr. 15-16.) The GAL stated that he had provided S.S. with the name of an attorney who could assist her, and also advised her of the upcoming hearing date and time. (Tr. 16.) He concluded by stating:

I've done everything I possibly could, your Honor, to implore [S.S.] to cooperate, to have her participate in this hearing, to do what is best for my wards, which is to assure a placement, but if this is a situation where every step is going to be pulling teeth and a final resolution in three years down the road, that's no longer best for my wards[.]

(Tr. 18.) The GAL told the court that Father spoke with S.S. earlier that morning prior to the hearing. He stated that he had hoped that she would at least be here to express her intent but deferred to the court given her absence. (Tr. 25.)

{¶ 9} Counsel for Father advocated that Father should be considered for legal custody based on his recent progress following his release from incarceration. Additionally, counsel requested that the juvenile court continue the hearing "so that efforts can be made to locate [S.S.]" (Tr. 20-22, 24.)

{¶ 10} The record reflects that nearly 45 minutes after the scheduled hearing time, S.S. still had not appeared for the hearing. The juvenile court noted that S.S.

"has failed to cooperate with three members of the Agency, the [Mother's attorney,] who was asking for legal custody to her, as well as the Guardian ad Litem." (Tr. 22-23.) Faced with S.S.'s failure to appear and refusal to cooperate with the process as directed by this court's prior order, the juvenile court reinstated its previous order granting permanent custody to the agency. In doing so, the juvenile court noted that S.S.

> ha[d] ample opportunity to comply with the Eighth District's opinion and as the agency has indicated, it is basically impossible for us right now to comply with that. She is very well aware. Notice was received. She has spoken to many people where she has indicated that she's not cooperating. I have been informed that [F]ather has indicated that he spoke to her today and she's still not here almost an hour later. [Mother's attorney] spoke with her. She's very well aware that she was supposed to be here today and she is not present. These children deserve permanency and that cannot be done as of today if we just continue to wait and see what she's [going to] do when we've given her ample opportunity to comply.

(Tr. 26.) The record reflects that the hearing concluded at 11:25 a.m.

{¶ 11} At 11:52 a.m., approximately 30 minutes after the hearing concluded, S.S. filed a "Notice with truth complete" letter with the clerk of court. The document was typed, and signed by S.S. and two witnesses. It is unclear to this court the exact intent of her notice, but it appears to demand that, with respect to the minor children, "if there is no claim verifiable with blue ink autograph * * * [that she] demand, require [sic ] now [that the children be] set free now to this woman[.]"

{¶ 12} On October 13, 2021, the juvenile court journalized its order finding that S.S. failed to execute the necessary documentation to comply with this court's mandate. The order determined that absent her compliance, awarding permanent

custody to the agency was in the minor children's best interests. Accordingly, the juvenile court granted permanent custody to the agency. Following a remand order from this court, the juvenile court issued another judgment entry granting permanent custody to the agency, and clarifying that the parental rights of both Mother and Father were terminated.

{¶ 13} These individual appeals by Mother and Father follow.[3]

## III. Father's Appeal

{¶ 14} Father appeals, raising two assignments of error. In his first assignment of error, he contends that the juvenile court abused its discretion by denying his oral motion to continue the hearing and reinstating the grant of permanent custody to CCDCFS. Father contends in his second assignment of error that the juvenile court erred by not considering him as legal custodian of the minor children.

### A. Motion to Continue

{¶ 15} The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge, and an appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. *In re L.S.*, 8th Dist. Cuyahoga No. 95809, 2011-Ohio-3836, ¶ 21, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981).

{¶ 16} In this case, Father requested a continuance "so that efforts can be made to locate [S.S.]." (Tr. 20-22, 24.) The juvenile court denied the request finding

---

[3] S.S. has not appealed the juvenile court's decision.

that S.S. had ample opportunity to comply with this court's mandate and had knowledge of the hearing. Our review of the record supports the juvenile court's decision.

{¶ 17} This court issued its decision reversing the grant of permanent custody to the agency and conditionally awarding legal custody to S.S. in June 2021, and the subsequent clarifying order was issued in August 2021. S.S. had approximately four months to comply with this court's directive to execute the necessary documentation for her obtain legal custody of the minor children. She failed to do so, and the record is clear that she had no intention of complying with this court's order. Additionally, she was well aware of the October 2021 hearing and chose to not appear. Based on S.S.'s refusal to cooperate with all parties, her lack of explanation for her absence on the day of the hearing, and the open-ended nature of the continuance request, we find that the juvenile court did not abuse its discretion in denying Father's request for a continuance.

## B. Permanent Custody

{¶ 18} Father contends that the juvenile court's decision reinstating its previous order of permanent custody to CCDCFS ran afoul of this court's remand clarification ordering the juvenile court to award legal custody of the minor children to S.S. We disagree.

{¶ 19} First, Father fails to support his argument with any citation to legal authority as required by App.R. 16(A)(7). Moreover, this court's remand order and clarification contained a condition precedent — S.S. was required to complete the

necessary documentation to allow her to lawfully obtain legal custody of the minor children. S.S. failed to abide by this court's order and thus, the condition precedent was not satisfied. Accordingly, S.S.'s noncompliance with this court's order placed the juvenile court in a precarious situation. As the agency rationally articulated in its appellate brief:

> When faced with the realization, however, that S.S. had no intention of signing the required forms, the [juvenile] court was left to do its best to resolve the issue based on the facts and circumstances before it so that the children were not kept in a potentially never-ending legal limbo, keeping in mind that as the Ohio Supreme Court has long recognized, "it is plain that the natural rights of the a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1991).

{¶ 20} The juvenile court complied with this court's remand order by affording S.S. the opportunity to sign the Statement of Understanding and Rehabilitation forms. When S.S. failed and refused to cooperate with the process, the juvenile court was unable to award legal custody of the minor children to S.S. Accordingly, we find that the juvenile court's determination to reinstate its prior decision awarding permanent custody to the agency did not contravene this court's prior orders.

### C. Legal Custodian

{¶ 21} Father contends that the juvenile court erred by not considering him for legal custodian of the minor children.

{¶ 22} Father moved for legal custody of the minor children in 2019. The juvenile court, however, denied his motion when it terminated his parental rights

and granted the agency permanent custody of the minor children following the hearing in August 2020. Father did not appeal this decision. *See Ar.S.*, 2021-Ohio-1958, 174 N.E.3d 28, at ¶ 3, fn. 3 (noting Father did not appeal the juvenile court's decision terminating his parental rights). The failure to timely file a notice of appeal from the order terminating his parental rights or denying him legal custody precludes Father from challenging issues that could have been raised in a direct appeal from that order. *See State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16 (any issue that could have been raised on direct appeal is barred by res judicata and not subject to review in subsequent proceedings).

{¶ 23} This court's decision in *Ar.S.* did not revive Father's parental rights because he did not appeal the juvenile court's decision terminating them. As such, Father did not even have standing to assert a right for legal custody. The Ohio Supreme Court has indicated that a parent who has lost permanent custody of a child does not have standing as a nonparent to file a petition for custody of that child. *In re McBride*, 110 Ohio St.3d 19, 2006-Ohio-3454, 850 N.E.2d 43, syllabus; *see also* R.C. 2151.414(F) (parent of a child for whom the court has issued an order granting permanent custody to an agency ceases to be a party to the action).

{¶ 24} Accordingly, we find no error in the juvenile court's decision excluding Father from consideration as the minor children's legal custodian.

{¶ 25} Father's assignments of error are overruled.

## IV. Mother's Appeal

{¶ 26} In her first assignment of error, Mother contends that the juvenile court's decision to deprive S.S. the opportunity to gain legal custody and to grant permanent custody to CCDCFS was an abuse of discretion, against the manifest weight of the evidence, and was not supported by clear and convincing evidence. Mother contends in her second assignment of error that the juvenile court erred by granting permanent custody to CCDCFS, depriving S.S. to gain legal custody because the agency failed to withstand its burden pursuant to R.C. 2151.414. Because these assignments of error essentially raise the same arguments, we will address them together.

### A. Grant S.S. Legal Custody

{¶ 27} Mother contends that the juvenile court deprived S.S. the opportunity to gain legal custody of the minor children. She makes this claim without explaining how or why the juvenile court abused its discretion in finding that S.S. failed to comply with this court's directive, thus preventing the juvenile court from awarding S.S. legal custody. Accordingly, we summarily reject Mother's unsupported claim. *See* App.R. 12(A)(2) and 16(A)(7). Moreover, in addressing Father's assignments of error, this court already determined that the juvenile court did not abuse its discretion in its determination that S.S.'s noncompliance and refusal to cooperate warranted the denial of legal custody to S.S.

## B. Permanent Custody

{¶ 28} Mother contends that the juvenile court's decision awarding the agency permanent custody of the minor child is against the manifest weight of the evidence. She further contends that the agency did not withstand its burden pursuant to R.C. 2151.414.

{¶ 29} Pursuant to R.C. 2151.414, a juvenile court may grant permanent custody of a child to an agency if, after a hearing, the court determines by clear and convincing evidence that one of the factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies, and that an award of permanent custody is in the child's best interest. This court will not reverse a juvenile court's award of permanent custody as being against the manifest weight of the evidence when the record contains competent, credible evidence by which the court could have found that the essential statutory elements for any award of permanent custody have been established. *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 22.

{¶ 30} Mother contends that the first prong of R.C. 2151.414 was not satisfied because the "trial court overlooked and discounted Mother's efforts to comply with the Agency's objectives for her and completely discounted the ability of [S.S.] to step in." We disagree.

{¶ 31} First, the remand order from this court in *Ar.S.* did not authorize the juvenile court to consider Mother's progress on her case plan. Additionally, Mother did not personally appear at the October hearing, which was scheduled to discuss S.S.'s willingness or unwillingness to comply with the steps necessary for the

juvenile court to comply with this court's directive. Finally, the law-of-the-case doctrine precludes Mother from challenging any determination regarding the first prong of R.C. 2151.414.

{¶ 32} This court in *Ar.S.* found that the agency satisfied its burden in demonstrating that the first prong of R.C. 2151.414(B) was met. *Ar.S.*, 2021-Ohio-1958, 174 N.E.3d 28, at ¶ 32-33. This court stated, "there is no dispute that the children cannot be placed with either parent. Mother has not challenged the juvenile court's finding under the first prong and our review demonstrates that the findings are supported by some competent, credible evidence." *Id.* at ¶ 32. This court found "no error" with the juvenile court's findings under the first prong of R.C. 2151.414. *Id.* at ¶ 33. Accordingly, this then-uncontested finding is now the law of case and cannot be challenged on appeal. *See In re A.B.*, 8th Dist. Cuyahoga No. 110292, 2021-Ohio-4134, ¶ 19, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984) (law-of-the-case doctrine provides that "'the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'").

{¶ 33} Regarding the second prong of R.C. 2151.414 — the award of permanent custody is in the children's best interest — Mother contends that the juvenile court abused its discretion in making this finding because "it failed to undertake a meaningful review of the evidence from the hearing." Again, Mother contends that this court should allow S.S. "the opportunity to step in." Again, we disagree.

{¶ 34} The record is quite clear that S.S. has had ample opportunity to "step in" and obtain legal custody of the minor children. She has repeatedly declined to comply with the legal requirements necessary for her to do so. Accordingly, S.S.'s inactions and refusal to cooperate with the agency and the juvenile court warrants the conclusion that awarding her legal custody of the minor children is not in their best interests.

{¶ 35} Aside from Mother's broad statement that the juvenile court did undertake a meaningful review of the evidence, Mother does not direct this court to any part of the record supporting her contention, as required by App.R. 16(A)(7). She further fails to explain how the juvenile court erred in its determination that granting permanent custody to the agency was in the minor children's best interest.

{¶ 36} Our review of the record reveals that the juvenile court complied with this court's mandate to afford S.S. another opportunity to complete the necessary documentation. When S.S. chose not to comply with those legal requirements, the juvenile court granted the agency's motion to reinstate the award of permanent custody. Mother has not directed this court to any legal authority that prohibits the juvenile court from granting the agency permanent custody in such situation. Accordingly, Mother's assignments of error are overruled.

{¶ 37} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
LISA B. FORBES, J., CONCUR